Corrigan, C.J.
We granted leave to appeal to consider whether a continuously locked residence hall at a public university was “open for use by members of *611 the public” under the public-building exception to governmental immunity, MCL 691.1406. We hold that the residence hall was not “open for use by members of the public.” We thus reverse the judgment of the Court of Appeals and reinstate the trial court’s order granting summary disposition for defendant.
I. UNDERLYING FACTS AND PROCEDURAL POSTURE
Plaintiff’s[1] daughter, a college student, resided at the Betsy Barbour Residence Hall on the University of Michigan’s Ann Arbor campus. The residence hall was locked twenty-four hours a day. A courtesy telephone outside the entrance to the building was available for visitors to call a resident and request admittance. The phone is located at the top of a short stairway at the building’s entrance. After using the courtesy phone, plaintiff lost her balance and fell down the stairs, injuring herself.
Plaintiff sued the university, claiming that the placement of the courtesy phone near a narrow step created a dangerous and defective condition. She attempted to avoid governmental immunity on the basis of the public-building exception, MCL 691.1406. Defendant moved for summary disposition under MCR 2.116(C)(7) (“The claim is barred because of .... immunity granted by law . . . .”). Defendant argued that the residence hall was not open for use by members of the public. Defendant presented an affidavit establishing that the residence hall was locked twenty-four hours a day. Visitors could gain access only by using the courtesy phone to contact a *612 resident, who then could unlock the door to allow entry. The trial court granted defendant’s motion.
On its initial review, the Court of Appeals affirmed.[2] The Court cited cases holding that public-housing facilities were not open for use by members of the public. See Griffin v Detroit, 178 Mich App 302; 443 NW2d 406 (1989); White v Detroit, 189 Mich App 526; 473 NW2d 702 (1991).
This Court remanded the case to the Court of Appeals for reconsideration in light of Horace v City of Pontiac, 456 Mich 744; 575 NW2d 762 (1998). 459 Mich 944 (1999). On remand, the Court of Appeals again affirmed[3] because the residence hall was indistinguishable from the public housing in Griffin and White. The Court noted that access to the entire building was limited to residents, guests admitted by the residents, and maintenance personnel. The Court also held in light of Horace that the steps on which plaintiff fell were not part of the residence hall.
This Court then remanded the case to the Court of Appeals a second time for reconsideration in light of Brown v Genesee Co Bd of Comm’rs, 464 Mich 430; 628 NW2d 471 (2001), and Fane v Detroit Library Comm, 465 Mich 68; 631 NW2d 678 (2001). 465 Mich 806 (2001). On the second remand, the Court of Appeals reversed the order granting summary disposition.[4] The Court discussed the statement in Brown that a jail was open for use by members of the public and concluded that the residence hall was also open *613 for use by members of the public. Applying Fane, the Court of Appeals concluded that the steps where plaintiff fell were part of the residence hall.
Defendant filed an application for leave to appeal. We granted the application “limited to the question of whether the university dormitory at which plaintiff was injured is ‘open for use by members of the public’ within the meaning of MCL 691.1406. ”[5] 467 Mich 888 (2002).
II. STANDARD OF REVIEW
We review de novo a trial court’s ruling on a motion for summary disposition. Hinkle v Wayne Co Clerk, 467 Mich 337, 340; 654 NW2d 315 (2002). “MCR 2.116(C)(7) tests whether a claim is barred because of immunity granted by law, and requires consideration of all documentary evidence filed or submitted by the parties.” Glancy v Roseville, 457 Mich 580, 583; 577 NW2d 897 (1998).
III. DISCUSSION
A. GOVERNMENTAL IMMUNITY AND THE PUBLIC-BUILDING EXCEPTION
Absent a statutory exception, a governmental agency is immune from tort liability when it exercises or discharges a governmental function. MCL 691.1407(1). A governmental function is “an activity that is expressly or impliedly mandated or authorized *614 by constitution, statute, local charter or ordinance, or other law.” MCL 691.1401(f). The term “governmental function” is to be broadly construed, and the statutory exceptions are to be narrowly construed. Horace, supra at 749.
It is not disputed that defendant has authority to construct dormitories for student housing. MCL 390.16 permits the Board of Regents of the University of Michigan to “erect from time to time, such buildings as are necessary for the uses of the university, on the grounds set apart for the same . . . .”
The public-building exception to governmental immunity, MCL 691.1406, provides:
Governmental agencies have the obligation to repair and maintain public buildings under their control when open for use by members of the public. Governmental agencies are liable for bodily injury and property damage resulting from a dangerous or defective condition of a public building if the governmental agency had actual or constructive knowledge of the defect and, for a reasonable time after acquiring knowledge, failed to remedy the condition or take action reasonably necessary to protect the public against the condition. . . . [Emphasis added.]
Thus, “ [t] o come within the narrow confines of this exception, a plaintiff must prove that (1) a governmental agency is involved, (2) the public building in question was open for use by members of the public, (3) a dangerous or defective condition of the public building itself exists, (4) the governmental agency had actual or constructive knowledge of the alleged defect, and (5) the governmental agency failed to remedy the alleged defective condition after a reasonable period or failed to take action reasonably necessary to protect the public against the condition after a *615 reasonable period.” Kerbersky v Northern Michigan Univ, 458 Mich 525, 529; 528 NW2d 828 (1998) (emphasis omitted), interpreting MCL 691.1406. The second element is at issue here, i.e., whether the locked residence hall was open for use by members of the public.
B. SUMMARY OF CASE LAW
A review of case law in this area offers guidance.[6] In Dudek v Michigan, 152 Mich App 81; 393 NW2d 572 (1986), a state mental-health facility was being renovated. A construction worker was injured when a cement block fell from a building. The Court of Appeals held that the public-building exception did not apply because the entire construction area was closed off by a fence, and only authorized personnel could enter.
In Griffin, supra, a resident of a public-housing facility drowned in her bathtub. The Court of Appeals held that the public-building exception did not apply because the dwelling unit “was not open for use by members of the public. It was open for use by the decedent as her private residence under the lease agreement.” Id. at 306.
In Taylor v Detroit, 182 Mich App 583; 452 NW2d 826 (1989), a boy was electrocuted after breaking into a locked electrical substation in an abandoned section of a public-housing project. The Court of Appeals held that the substation was not open for use by members of the public. “Here, only authorized personnel were allowed entry into the substation; the struc *616 ture was neither designed nor intended to be accessible to or used by the general public.” Id. at 588.[7]
In White, supra, a resident of a public-housing facility was injured on a patio at the facility. The plaintiff attempted to distinguish Griffin on the ground that the accident in White occurred in an area accessible to the public rather than in a tenant’s private residence. The Court of Appeals rejected that distinction:
Because the building in the instant case was a residential housing facility containing private housing units, and was not a building used for public offices or for a public purpose, the public building exception does not apply. And the area at issue, being adjacent to a nonpublic building, does not fall within the exception merely because the area may be accessible by the public. [Id. at 529.]
In Steele v Dep’t of Corrections, 215 Mich App 710; 546 NW2d 725 (1996), a prison inmate was injured while he was part of a work crew renovating a state building. The Court of Appeals concluded that the public-building exception did not apply because the building was not open to the public during renovations.
In Kerbersky, supra, a construction worker fell from a ladder while renovating a university administration building. This Court held that the building was open for use by members of the public, even though the specific accident site was closed for renovations. This Court stated, however, that where an entire building is closed for renovations, it is not open for *617 use by members of the public. This Court therefore endorsed the holdings in Dudek and Steele.
The Kerbersky Court agreed with the result in White because areas adjacent to public buildings are not covered by the exception. Also agreeing with the holding in Griffin, the Kerbersky Court stated: “A tenant who is present in a city-owned apartment as the result of an oral or written lease is not using the building as a member of the public, rather, such a person has a contractual possessory interest in the apartment.” Id. at 535 (emphasis added). This Court further approved the Taylor holding that the locked electrical substation was not open for use by members of the public.
Next, in Brown v Genesee Co Bd of Comm’rs (After Remand), 464 Mich 430; 628 NW2d 471 (2001), an inmate injured himself in the shower area of a jail. A majority of this Court concluded that a jail inmate is not a member of the public for the purposes of the public-building exception to governmental immunity as that relates to a jail.
C. ANALYSIS
We reaffirm that mere public ownership of a building is insufficient to meet the requirements of the public-building exception. The statute makes plain that governmental agencies owe a duty to repair and maintain “public buildings under their control when open for use by members of the public” (emphasis added). If mere public ownership sufficed, the phrase “when open for use by members of the public” would be rendered nugatory. Courts must avoid a construction that renders part of a statute nugatoiy. Brown, *618 supra at 437, citing People v Borchard-Ruhland, 460 Mich 278, 285; 597 NW2d 1 (1999).
To determine whether a building is open for use by members of the public, the nature of the building and its use must be evaluated. The government, of course, controls the use that will be made of its buildings. If the government has restricted entry to the building to those persons who are qualified on the basis of some individualized, limiting criteria[8] of the government’s creation, the building is not open to the public. This test arises from the plain statutory language. If access to a building is limited in the manner we have described, members of the public may not freely enter, and the building is not open for use by members of the public.[9]
*619 This test focuses on whether the government intends to limit the public’s access to the building — a breach of the rules limiting entry would not render the building open to the public. Where a person who is not qualified for entry nonetheless gains access, the government remains entitled to immunity.
Moreover, the statutory language makes clear that the public-building exception applies when the building is open for use by members of the public. A building such as a courthouse that is open to the public during business hours may nonetheless be closed to the public at other times, such as at night or on weekends. Similarly, a university athletic facility may be open to the public during a sporting event, but closed to the public at other times. Because the statutory language limits the exception to periods when the building is open for use by members of the public, accidents that occur when the building is closed to the public do not fall within the confines of the exception, and the government is entitled to immunity.
*620 The residence hall in this case was not open for use by members of the public. Members of the public could not enter the building without using a courtesy phone to contact a resident and asking the resident to unlock the door. In that manner, the university restricted entry to the residence hall to those persons who were qualified on the basis of individualized, limiting criteria — in this case, permission from a tenant. Accordingly, the building was not open to the public.[10]
IV. CONCLUSION
The Betsy Barbour Residence Hall was not open for use by members of the public. Accordingly, plaintiff has not satisfied the requirements of the public-building exception, and defendant is immune from tort liability. We reverse the judgment of the Court of Appeals and reinstate the trial court’s order granting summary disposition for defendant.
*621 Weaver, Taylor, Young, and Markman, JJ., concurred with Corrigan, C.J.
Cavanagh, J., concurred in the result only.

 We refer to plaintiff Ann Maskery as “plaintiff.” Robert Maskery’s claim is derivative of his wife’s claim.

 Unpublished order, entered February 10, 1997 (Docket No. 187738).

 Unpublished opinion per curiam, issued March 24, 2000 (Docket No. 187738).

 Unpublished opinion per curiam, issued January 11, 2002 (Docket No. 187738).

 Defendant did not seek leave to appeal on whether the steps on which plaintiff fell were part of the public building. Thus, we do not reach that issue. We also do not address whether plaintiff has established a dangerous or defective condition of a public building.

 A helpful summary of case law may also be found in Kerbersky, supra.

 In Kerbersky, supra, this Court approved the result in Taylor but noted that “[t]he word ‘general’ is not in the statute and therefore should not be read into the statute.” Id. at 534.

 Such limiting criteria would not include universal requirements such as possession of a ticket, as for an athletic or theatrical event, or the need to universally bar entry to those with weapons, such as at courthouses or other secure, but public, facilities.

 The test that we have set forth should not be confused with the following discussion of “limited access” in Kerbersky:
As noted in Steele, the public building exception can apply to buildings with limited access. For example, this Court’s handling of Bush v Oscoda Area Schools, 405 Micb 716; 275 NW2d 268 (1979), demonstrates that the building in question does not have to be open to members of the general public to come within the statute.
In Bush, we held that the public building exception applied to an injury sustained in a high school chemistry class. Very few people could legitimately have been in this classroom. This particular classroom was not accessible by members of the general public. [Kerbersky, supra at 534.]
The phrase “limited access” was used in Kerbersky to explain that where access to part of a building is limited, the public-building exception may still apply if the building remains open for use by members of the public. Here, the concept of limited access is used in a different sense, i.e., to describe a building in which access to the entire building, or the general right of entry, is restricted to persons who are qualified to enter. Where the government has created rules that render the building closed except to those who are qualified to enter, the building is not open for use *619 by members of the public. The focus of the test is on the government’s intended use of the building. Thus, the test set forth in this case should not be confused with the language in Kerbersky clarifying that a building may be open to the public even though access to a part of the building is limited.
In other words, the Kerbersky holding and the test we announce here address distinct questions that may arise in a court’s analysis under the public-building exception. Kerbersky clarifies that a building may be “open for use by members of the public” even where a location within the building is restricted from public use. The present case, however, involves a building that is not open for use by the public because access to the entire building is limited in the manner we have described. Where, as here, the entire building is closed to the public, the holding in Kerbersky, concerning a building that remains open despite containing a location that is restricted to the public, simply is not implicated.

 The Court of Appeals determined that the delivery of supplies, mail, and food by nonresidents rendered the residence hall open for use by members of the public. In reaching this conclusion, the Court of Appeals relied on dicta in Brown discussing deliveries to a jail. The Brown plurality opinion should not be read to suggest that mere deliveries are sufficient to render a building open for use by members of the public. The Court of Appeals erred in relying primarily on this dicta from Brown. Instead, as our opinion today explains, the appropriate test for determining whether a building is open for use by members of the public is whether entry to the building has been restricted on the basis of some individualized, limiting criteria. This analysis requires consideration of the use of the particular building involved.
Our dissenting colleague also attempts to apply dicta from the Brown plurality opinion to this case and questions whether a jail may be open for use by members of the public while the residence hall here is not. The central holding in Brown, however, concerned whether an inmate was a member of the public. We decline to revisit issues that are not before us. We are confident that the test we have set forth is derived from the statutory text and supports the result we have reached.