McDOWELL v CITY OF DETROIT

Docket No. 246294. Submitted October 19, 2004, at Detroit. Decided November 9, 2004, at 9:10 a.m. Leave to appeal sought.

Joyce McDowell, a fiduciary, brought an action in the Wayne Circuit Court against the city of Detroit and the Detroit Housing Commission, seeking damages for deaths and injuries caused by a fire, apparently started by a fault in the electrical supply equipment within the wall or at an outlet, in a commission-owned housing unit. McDowell sued as the personal representative of the estates of Blake Brown, Joyce Brown, and Christopher Brown, deceased, and as conservator for Jonathon Fish, Joanne Campbell, and Juanita Fish. The defendants moved for summary disposition of plaintiff's contract claims on the basis of governmental immunity, which motion the trial court, Edward M. Thomas, J., denied because governmental immunity applies to tort claims, not contract claims, thus allowing continuation to trial of the contract claims of the tenants as well as of others injured or killed in the burned apartment. The trial court precluded summary disposition for the defendants on a basis of nuisance per se, nuisance, or trespass-nuisance, which theories of relief the court stated were recognized exceptions to governmental immunity from tort liability. The trial court also determined that the rental of the premises was not a proprietary function and, although violations of the housing code would allow a claim to proceed, in this case the plaintiff failed to establish the existence of a genuine issue of material fact that would preclude summary disposition for the defendants. The defendants appealed the denials of summary disposition under MCR 7.202(6)(a)(v), which defines a final judgment to include an order denying summary disposition on the basis of governmental immunity as being an appealable final order, alleging that the contract claims were really tort claims subject to governmental immunity. The plaintiff cross-appealed, seeking a reversal of the trial court determinations that the rental of the premises was not a proprietary function and alleging that relief erroneously was denied on the claim of housing code violations.

The Court of Appeals held:

1. The court rules limit an appeal from an order denying governmental immunity to the portion of the order with respect to which there is an appeal of right. The issues for which there is an appeal as of right in this case are those that concern governmental immunity. The tort claims in this case involve governmental immunity and are within the Court of Appeals scope of review. The contract claims in this case sound in tort and implicate governmental immunity. They are also subject to review by the Court of Appeals. Finally, in her cross-appeal, the plaintiff may challenge, and the Court of Appeals may review, any of the trial court's rulings.

2. A nuisance per se is an activity or condition that constitutes a nuisance at all times and under all circumstances without regard to the care with which it is conducted or maintained, i.e., an intrinsically unreasonable dangerous activity. Delivery of electricity is not an intrinsically unreasonable or dangerous activity. Plaintiff failed to establish facts demonstrating the existence of a nuisance per se, so the trial court erred by not granting summary disposition for the defendants on this count.

3. A nuisance in fact requires a significant harm resulting from the defendant's unreasonable interference with the use or enjoyment of the property. Nuisance in fact is a negligent nuisance created by the landowner's negligent acts, which in this case could include violation of duties at law in compliance with the housing code, duties of repair and maintenance under the lease contract, and duties to maintain electrical facilities under the lease. The testimony below created a genuine issue of material fact on the issue of nuisance in fact, including the duty and the nuisance. The trial court properly denied summary disposition for the defendants on this count.

4. Trespass requires an unauthorized, direct, or immediate intentional intrusion of a physical, tangible object onto the land over which the plaintiff has a right of possession. The fire was not a trespass because there was no intent to intrude. The trial court should have granted summary disposition for the defendants on this count.

5. Trespass-nuisance is a trespass or interference with the use or enjoyment of land caused by a physical intrusion set in motion by the government or its agents and resulting in personal injury or damage to property. Whether the government or its agent has an intent to intrude is irrelevant in trespass-nuisance. In this case, the spaces between the outer wall of the building and the inner wall of the apartment, the open spaces created by the studs, in which the fire started were under the control of the commission.

Whether the plaintiff can establish a physical intrusion is a matter of fact for the jury. The trial court correctly denied summary disposition for the defendants on this count.

6. In this case, all the lease-based contract claims are recapitulations of tort claims. An action in tort may be brought by a tenant predicated on the lessor's breach of an agreement to make repairs, allowing a tenant to recover in tort for personal injuries in actions sounding in contract. An analysis under the governmental immunity act indicated that the defendants were engaged in the exercise or discharge of a governmental function, which allows a governmental immunity defense unless a statutory exception applies. Because no governmental immunity exception applies to them, the tort claims brought under the guise of contract claims should properly have been dismissed by summary disposition.

7. The plaintiff claimed that the housing commission, in supplying housing, was involved in a proprietary function, precluding the use of the governmental immunity defense, MCL 691.1413. A governmental proprietary function is any activity conducted for the primary purpose of producing a pecuniary gain for the agency, excluding any activity normally supported by taxes or fees. A housing commission operating low-income housing projects is authorized by MCL 125.651 *et seq.*, which preclude the commission from operating the projects at a profit. The plaintiff did not submit evidence of the existence of a profit to create a genuine issue of material fact. The trial court properly granted summary disposition for the defendants on this issue.

8. The plaintiff claimed that the residence was a dangerous building, MCL 125.538, or manifestly unsafe or unfit for human habitation, MCL 125.539(f) or (h), because the fire started within a wall space. Whether the electrical supply system condition was manifestly unsafe or the apartment was unfit for human habitation is a question of fact. However, without an applicable exception to governmental immunity, the plaintiff's claim fails and summary disposition should have been granted for the defendants on this issue.

Affirmed in part, reversed in part, and remanded to the trial court for further proceedings.

LANDLORD AND TENANT — BREACH OF CONTRACT — DAMAGES — GOVERNMENTAL IMMUNITY.

An action in tort may be brought by a tenant predicated on the lessor's breach of an agreement to make repairs, thereby allowing the tenant to recover in tort for personal injury in an action alleging a breach of contract; but where the landlord is a nonprofit,

governmental housing commission, the tort claim is subject to governmental immunity statutes and their exceptions.

*Fieger, Fieger, Kenney & Johnson, P.C.* (by *Geoffrey N. Fieger* and *Victor S. Valenti*), for the plaintiff.

*John A. Schapka*, city of Detroit Corporation Counsel, and *Rutledge, Manion, Rabaut, Terry & Thomas, P.C.* (by *Alvin A. Rutledge* and *Matthew A. Brauer*) (*Gross, Nemeth & Silverman, P.L.C.*, by *James G. Gross*, of counsel), for the defendants.

Before: DONOFRIO, P.J., and WHITE and TALBOT, JJ.

DONOFRIO, P.J. Defendants, city of Detroit and the Detroit Housing Commission, appeal as of right an order denying their motion for summary disposition on the ground of governmental immunity, MCR 7.202(6)(a)(v), in this action in both tort and contract. On appeal, defendants argue that plaintiff cannot recover under theories of nuisance, trespass-nuisance, or trespass, and cannot maintain a contract/warranty action. Plaintiff Joyce McDowell, who is the personal representative for the estates of Blake Brown, Joyce Brown, Christopher Brown, Naomi Fish, Johnny C. Fish, and Jermaine Fish, and the conservator for Jonathon Fish, Joanne Campbell, and Juanita Fish, cross-appeals, arguing that the Court should reverse the trial court's grant of summary disposition on her claim that the rental of the premises was a proprietary function, as well as on her claim of violations of the housing code, both in avoidance of governmental immunity.[1]

---

[1] In the lower court pleadings, Joyce McDowell was titled, "special personal representative" and "former special personal representative" as it related to the estates of Blake Brown, Joyce Brown, Christopher Brown, Naomi Fish, Johnny C. Fish, and Jermaine Fish without explanation. Additionally, regarding Jonathon Fish, Joanne Campbell, and

After reviewing the record and the applicable law, we conclude that plaintiff's tort claims for nuisance in fact and trespass-nuisance survive in avoidance of governmental immunity. However, the remainder of plaintiff's tort claims as well as the claims brought in contract fail. And finally, after reviewing plaintiff's issues on cross-appeal pursuant to MCR 7.207, we affirm the trial court's grant of summary disposition for defendant on both the proprietary function and housing code violation claims. We affirm in part, reverse in part, and remand.

## I. SUBSTANTIVE FACTS AND PROCEDURE

This action arose out of a fatal fire that occurred on December 1, 2000, at 2537 St. Antoine, an apartment in the Brewster-Douglas Housing Project in Detroit. The fire resulted in the death of six children and injuries to another child and one adult.

Joanne Campbell was the lessee of the premises. Joanne Campbell testified in a deposition that she made several complaints to defendant Detroit Housing Commission regarding electrical conditions in her home before the fire. The record also includes a work order signed by Joanne Campbell indicating that an employee of the Detroit Housing Commission had visited the premises on at least one occasion to "trouble shoot" a circuit. Further, the record indicates that on the day before the fire occurred, an employee of the Detroit Housing Commission visited the premises to address electrical complaints made my Joanne Campbell. One

---

Juanita Fish, McDowell was titled both "special conservator" and "conservator," again without elaboration. For purposes of this appeal, in the interests of consistency and clarity, we will refer to McDowell only as "plaintiff," "personal representative," or "conservator."

day later, on the morning of December 1, 2000, a fire occurred on the premises, resulting in several deaths and injuries.

Plaintiff Joyce McDowell, the personal representative for the estates of the deceased victims and conservator for certain other victims, filed her complaint on December 6, 2000, alleging negligence and failure to maintain the premises. Plaintiff filed an amended complaint on March 15, 2001, enumerating six separate counts, including nuisance per se, nuisance, trespass-nuisance, breach of contract, breach of express and implied warranty of habitability and quiet enjoyment, and, finally, violation of the housing code.

Defendants filed a motion for summary disposition on December 28, 2002, pursuant to MCR 2.116(C)(7), (C)(8), and (C)(10). After entertaining oral argument, the trial court issued its opinion from the bench partially granting and partially denying defendants' motion. The trial court properly recognizing that *Pohutski v City of Allen Park*, 465 Mich 675; 641 NW2d 219 (2002), was inapplicable because of the filing date, applied *Hadfield v Oakland Co Drain Comm'rs*, 430 Mich 139; 422 NW2d 205 (1988). The trial court stated that *Hadfield* recognized exceptions to governmental immunity for nuisance per se, nuisance, and trespass-nuisance and, therefore, *Hadfield* precluded a grant of summary disposition on those tort claims pursuant to MCR 2.116(C)(7). The trial court did not address the torts under either MCR 2.116(C)(8) or (C)(10). The trial court then addressed plaintiff's contract claims and found that she could maintain breach of contract claims on behalf of the Campbell and Brown estates and the Fishes under a third-party beneficiary theory. The court also stated that plaintiff could maintain a breach of warranty claim. Therefore, the trial court denied defen-

dants' motion for summary disposition on the contract claims apparently pursuant to MCR 2.116(C)(8). Further, the trial court stated that the operation of public housing is not a proprietary function and granted defendants' motion relative to claims that stated that it is a proprietary function. Finally, the trial court stated that although it believed a violation of the housing code was a claim for which relief could be granted, nevertheless, it granted summary disposition to defendants on the claim because the court found there was no genuine issue of material fact relating to the statutes at issue.

The trial court entered an order reflecting its findings on January 17, 2003. Shortly thereafter, defendants filed a claim of appeal in this Court regarding that order pursuant to MCR 7.202(6)(a)(v). Plaintiff cross-appealed pursuant to MCR 7.207. The trial court stayed proceedings in the trial court pursuant to MCR 7.209(E)(4) during the pendency of the appeal.

## II. APPLICABLE COURT RULES

At the outset, because this case includes an assortment of issues, we must address which issues on appeal are properly before us. Plainly, a "final judgment" or "final order" pursuant to MCR 7.202(6)(a)(v) includes "[a]n order denying governmental immunity to a governmental party, including a governmental agency, official, or employee." However, the court rules limit an appeal from an order denying governmental immunity "to the portion of the order with respect to which there is an appeal of right." MCR 7.203(A)(1); *Walsh v Taylor*, 263 Mich App 618; 689 NW2d 506 (2004). The issues for which there are appeals as of right are those issues concerning governmental immunity. The trial court specifically delineated those claims that it found to

involve governmental immunity and identified only plaintiff's tort claims. Clearly, the tort claims are within our scope of review.

Alternatively, the trial court stated that plaintiff's contract claims did not involve governmental immunity and denied defendants' motion for summary disposition, under MCR 2.116(C)(8), not (C)(7). However, our review of plaintiff's contract claims reveals that although the claims are labeled contract claims, and are framed in contract language, plaintiff's contract claims do in fact implicate governmental immunity because the claims are in reality tort claims. Because the "contract" claims are in substance tort claims, they do implicate governmental immunity and are therefore subject to our review as of right pursuant to MCR 7.203(A).[2]

The issues raised by plaintiff on cross-appeal are also within our purview because they are governed by separate court rule, MCR 7.207. Another panel of this Court recently pointed out that,

> [u]nlike MCR 7.202(6)(a)(iii)-(v) and MCR 7.203(A), the court rule governing cross-appeals to this Court, MCR 7.207, does not contain any language of limitation. Instead, the clear and unambiguous terms of MCR 7.207(A)(1) authorize any appellee to file a cross-appeal whenever an appellant has either filed an appeal as of right, or when this Court has granted an appellant's application for leave to appeal. The language of MCR 7.207 does not restrict a cross-appellant from challenging whatever legal rulings or other perceived improprieties occurred during the trial court proceedings. Indeed, MCR 7.207(D) contemplates

---

[2] If the contract claims were indeed straightforward contract claims that by definition could not implicate governmental immunity, by operation of MCR 7.202(6)(a)(v) and MCR 7.203(A), they would not be subject to automatic review and it would be incumbent on defendants to file an application for leave to appeal rather than a claim of appeal.

> that even "[i]f the appellant abandons the initial appeal or the court dismisses it, the cross appeal may nevertheless be prosecuted to its conclusion." See MCR 7.207(D); *In re MCI*, 255 Mich App 361, 364-365; 661 NW2d 611 (2003). [*Costa v Community Emergency Medical Services, Inc*, 263 Mich App 572, 583-584; 689 NW2d 712 (2004).]

Accordingly, we will review those issues raised by plaintiff in her cross-appeal.

### III. CLAIMS IN TORT

The trial court properly found that because the case was filed on December 6, 2000, before April 2, 2002, a date of demarcation as provided by our Supreme Court's decision in *Pohutski*, that *Hadfield* remained controlling. The trial court then found that *Hadfield* recognized nuisance per se, nuisance, and trespass-nuisance as exceptions to governmental immunity, and, therefore, *Hadfield* precluded a grant of summary disposition on the tort claims pursuant to MCR 2.116(C)(7) only.

A motion under MCR 2.116(C)(7) " 'tests whether a claim is barred because of immunity granted by law, and requires consideration of all documentary evidence filed or submitted by the parties.' " *Maskery v Univ of Michigan Bd of Regents*, 468 Mich 609, 613; 664 NW2d 165 (2003), quoting *Glancy v Roseville*, 457 Mich 580, 583; 577 NW2d 897 (1998); see also MCR 2.116(G)(5). This analysis is more akin to an analysis to be performed under MCR 2.116(C)(10) rather than an analysis under MCR 2.116(C)(8). In ruling on a motion for summary disposition brought only under MCR 2.116(C)(7) and asserting governmental immunity, the trial court is charged with completing a full review of " 'all documentary evidence filed or submitted by the parties.' " *Maskery, supra* at 613, quoting *Glancy, supra*

at 583. Here, the trial court did not engage in an analysis of the record evidence and only decided the issues involving governmental immunity as matters of law pursuant to MCR 2.116(C)(8) alone. This was incorrect.

We review de novo a trial court's decision on a motion for summary disposition under MCR 2.116(C)(7) to determine if the moving party was entitled to judgment as a matter of law. *Lavey v Mills*, 248 Mich App 244, 249; 639 NW2d 261 (2001). A court must consider all submitted documentary evidence in the light most favorable to the nonmoving party. *Id.* at 250. Further, a court must accept as true the contents of the complaint unless specifically contradicted by submitted documentary evidence. *Id.*; *Maiden v Rozwood*, 461 Mich 109, 119; 597 NW2d 817 (1999). In our review de novo, we will engage in the proper analysis of a motion brought under MCR 2.116(C)(7) as mandated in the court rule and by our Supreme Court in *Maskery, supra* at 613.

### A. NUISANCE PER SE

Defendants' first argue that plaintiff's theory of nuisance per se fails because it is not an exception to the common-law governmental immunity doctrine. In the alternative, if an action can be sustained, plaintiff's claim for nuisance per se fails because defendants' use of its property was not in a manner that impaired plaintiff's use of the property and because defendants' alleged conduct in this case is not within the scope of nuisance per se.

In general, governmental agencies are granted statutory immunity from tort liability unless otherwise provided in the act. MCL 691.1401 *et seq.*; see also *Haaksma v Grand Rapids*, 247 Mich App 44, 52; 634 NW2d 390 (2001). Despite the fact that there are some

stated exceptions to governmental immunity, it remains unclear in Michigan whether a nuisance per se exception exists. *Id.* at 56. However, even assuming for the sake of argument that nuisance per se is a recognized exception under *Hadfield*, plaintiff has nevertheless failed to establish facts amounting to a nuisance per se.[3]

"[A] nuisance per se is an activity or condition which constitutes a nuisance at all times and under all circumstances, without regard to the care with which it is conducted or maintained." *Li v Feldt (After Second Remand)*, 439 Mich 457, 476-477; 487 NW2d 127 (1992) (opinion by CAVANAGH, C.J.). In order to meet the definition of a nuisance per se, the condition must be unreasonable by its very nature and must not be predicated on a lack of care. *Id.* at 477. Pursuant to this definition, our Supreme Court has stated that neither an improperly timed traffic light nor the maintenance of a holding pond could be considered "an intrinsically unreasonable or dangerous activity, without regard for care or circumstances . . . [because] both activities serve obvious and beneficial public purposes and are clearly capable of being conducted in such a way as not to pose any nuisance at all." *Id.*

The condition at issue here is a fire that broke out in householders' home, an apartment leased from defendant Detroit Housing Commission. Plaintiff avers, through her expert witnesses, that the fire "originated in the interstitial spaces of the north wall of the first floor bedroom" at the electrical duplex outlet because of its failure. By plaintiff's own declaration, the fire occurred because of an electrical supply system malfunc-

---

[3] Because we do not have a factual scenario before us today that meets the definition of a nuisance per se, we will not reach the question of law regarding whether a nuisance per se exception to governmental immunity exists in Michigan.

tion in the walls of the apartment. Like the operation of traffic lights and holding ponds, the maintenance of electricity, including circuitry, wiring, and electrical outlets in buildings, is not "an intrinsically unreasonable or dangerous activity." *Li, supra* at 477 (opinion by CAVANAGH, C.J). Obviously with proper care and concern, the transport and distribution of electricity serves innumerable valuable public purposes and can be conducted in a manner so as not to pose any nuisance whatsoever. For these reasons, plaintiff has failed to establish facts demonstrating a nuisance per se, and the trial court erred when it failed to grant defendants' motion for summary disposition regarding nuisance per se pursuant to MCR 2.116(C)(7).

### B. NUISANCE IN FACT

Defendants next argue that plaintiff cannot sustain a cause of action for nuisance. It is defendants' position that plaintiff's claim for nuisance is without merit because, in order to sustain a cause of action for nuisance, there must be specific conduct or a specific use of property giving rise to a nuisance claim, not a failure to maintain property or negligent maintenance of the property, and that plaintiff's claim is merely a negligent maintenance claim disguised as a nuisance claim in an attempt to circumvent the doctrine of governmental immunity.

This Court has explained the difference between nuisance per se and nuisance in fact:

> From the point of view of their nature, nuisances are sometimes classified as nuisances *per se* or at law, and nuisances *per accidens* or in fact. A nuisance at law or a nuisance *per se* is an act, occupation, or structure which is a nuisance at all times and under any circumstances, regardless of location or surroundings. Nuisances in fact or

*per accidens* are those which become nuisances by reason of circumstances and surroundings, and an act may be found to be a nuisance as a matter of fact where the natural tendency of the act is to create danger and inflict injury on person or property. The number of nuisances per se is necessarily limited, and by far the greater number of nuisances are nuisances per accidens. [*Rosario v City of Lansing*, 403 Mich 124, 132-133; 268 NW2d 230 (1978) (opinion of FITZGERALD, J.), quoting *Bluemer v Saginaw Central Oil & Gas Service, Inc*, 356 Mich 399, 411; 97 NW2d 90 (1959).]

To establish the existence of a nuisance in fact, also known as a nuisance under the circumstances, a plaintiff must show *"significant harm* resulting from the defendant's *unreasonable interference* with the use or enjoyment of the property." *Adams v Cleveland-Cliffs Iron Co*, 237 Mich App 51, 67; 602 NW2d 215 (1999). "[A] nuisance in fact is a nuisance by reason of circumstances and surroundings [and has the] natural tendency to create danger and inflict injury on person or property." *Wagner v Regency Inn Corp*, 186 Mich App 158, 164; 463 NW2d 450 (1990).

Nuisance in fact has been divided into two further subclasses: intentional and negligent. *Gerzeski v Dep't of State Hwys*, 403 Mich 149, 158; 268 NW2d 525 (1978) (opinion by MOODY, JR., J.). This Court, in *Wagner, supra* at 164, stated the following with regard to a nuisance in fact:

> A negligent nuisance in fact is one that is created by the landowner's negligent acts, that is, a violation of some duty owed to the plaintiff which results in a nuisance. A nuisance in fact is intentional if the creator intends to bring about the conditions which are in fact found to be a nuisance. To establish intent, the plaintiff must show that, when the defendant created or continued the condition causing the nuisance, he knew or must have known that

the injury was substantially certain to follow, in other words, [show] deliberate conduct. [Citations omitted.]

At issue in this case is negligent nuisance. Accordingly, plaintiff need not establish intent, but only a violation of some duty owed to the householders. Clearly, defendants have duties at law, including compliance with the implied warranty of habitability, to maintain the premises in reasonable repair as set forth in MCL 554.139 of the real and personal property code, and in MCL 125.538, which makes unlawful the keeping of dangerous buildings. Additionally, defendants have a contractual duty under the express terms of the written lease agreement to "[r]epair and maintain the dwelling unit . . . in decent, safe and sanitary condition" pursuant to § VII.A.1.a. of the lease. Further, defendants have a contractual duty to "[m]aintain electrical . . . facilities . . . supplied or required to be supplied by Management in good and safe working order and condition" under § VII.A.1.d. of the lease. Hence, we have identified at least three duties defendants owed plaintiffs' householders.[4] Whether defendants actually breached any or all of these duties is a question of fact for the jury.

Regarding the nuisance itself, although the electrical wiring was capable of being maintained in such a way as to not pose any nuisance, and therefore we concluded that plaintiff did not present a claim of nuisance per se, we do not come to a similar result when reviewing nuisance in fact. In reviewing the allegations and record evidence, we are unable to conclude that defendants were free of negligence in the creation of a dangerous condition that was the proximate cause of the occurrence. Restated, the materialization of the defective

---

[4] We do not intend for this to be an all-encompassing list of duties defendants owed to plaintiff's householders.

condition resulting in the fatal fire results in an emergence of a question of fact for the jury regarding whether "by reason of circumstances and surroundings, [the defective condition had] the natural tendency . . . to create danger and inflict injury on person or property." *Wagner, supra* at 164.

In sum, the deposition testimony creates a genuine issue of material fact on the issue of nuisance in fact, including both the duty aspect as well as the nuisance itself, and, therefore, the trial court properly denied defendants' motion for summary disposition.

### C. TRESPASS

Defendants argue that the facts alleged by plaintiff do not support a claim of trespass. Defendants assert that plaintiff cannot show a trespass on the property because the fire commenced on the householders' leased property and because fire is not a tangible object for purposes of the tort of trespass.

"Recovery for trespass to land in Michigan is available only upon proof of an unauthorized direct or immediate intrusion of a physical, tangible object onto land over which the plaintiff has a right of exclusive possession." *Adams, supra* at 67. The intrusion must also be intentional. "If the intrusion was due to an accident caused by negligence or an abnormally dangerous condition, an action for trespass is not proper." *Cloverleaf Car Co v Phillips Petroleum Co*, 213 Mich App 186, 195; 540 NW2d 297 (1995), citing Prosser & Keeton, Torts (5th ed), § 13, pp 73-74.

Reviewing the facts of the case in the light most favorable to plaintiff, and relying on the testimony of plaintiff's experts, the fire in the apartment was not started intentionally, but rather was the result of an electrical system malfunction. Plaintiff has not alleged

any facts tending to show or even implying that the fire was somehow set intentionally. Because the tort of trespass requires an intentional intrusion, not one caused by accident, mere negligence, or a dangerous condition, plaintiff cannot recover for trespass under the circumstances of this case. Therefore, the trial court should have granted summary disposition on the tort of trespass in favor of defendants pursuant to MCR 2.116(C)(7).

### D. TRESPASS-NUISANCE

Defendants argue that the facts alleged by plaintiff do not support a claim of trespass-nuisance because the facts show that defendants did not create or maintain the fire condition on its land and then allow it to spread to the householders' premises. Defendants further assert that without a physical intrusion invading the householders' premises from some outside location, plaintiff's claim fails as a matter of law.

Trespass-nuisance is a "trespass or interference with the use or enjoyment of land caused by a physical intrusion that is set in motion by the government or its agents and resulting in personal or property damage," and its elements are "condition (nuisance or trespass); cause (physical intrusion); and causation or control (by government)." *Hadfield, supra* at 169 (opinion by BRICKLEY, J.). In the case at bar, defendants challenge only one of the elements of trespass-nuisance, the "cause" or "physical intrusion" element. Therefore, for purposes of this appeal, our analysis is limited to only the cause element.

Again, the condition at issue here is a fire that broke out in the householders' home, an apartment leased from defendant. Plaintiff has presented depositions from an expert witness who claimed that the fire

"originated in the interstitial spaces of the north wall of the first floor bedroom" at the electrical duplex outlet because of its failure. The fact scenario involved here is that the fire occurred in the apartment after an electrical system malfunction in the walls of the apartment building traveled to an outlet in the apartment. Defendants dispute whether under these facts plaintiff can establish the "cause" or "physical intrusion" required to support a claim for trespass-nuisance.

In order to establish the "cause" or "physical intrusion" necessary for a claim of trespass-nuisance, a plaintiff must present proof that a defendant physically invaded his property by adding something to it. *Peterman v Dep't of Natural Resources*, 446 Mich 177, 207; 521 NW2d 499 (1994). Unlike trespass, under the trespass-nuisance exception, the defendant's intent to cause the trespass or nuisance is generally irrelevant. *Hadfield,* supra at 161 (opinion by BRICKLEY, J.); *Traver Lakes Community Maintenance Ass'n v Douglas Co,* 224 Mich App 335, 345; 568 NW2d 847 (1997).

In making determinations relative to "cause" or "physical intrusion" in this case, we must engage in a discussion of the interstitial space between the walls of the premises. We have studied the written lease and we conclude that the interstitial space between the outer walls of the premises is under the sole control of the lessor. The language of the lease specifically provides that the lessee resident agrees to "make no alterations or repairs or redecoration to the interior of the Premises or to install additional equipment or major appliances without the written consent of Management." Section VII.B.1.G. The plain language of the contract indicates that the lessee had only very limited control over even the interior of the premises, let alone control over the interstitial space between the walls. Accord-

ingly, under our plain reading of the lease agreement, the interstitial space is totally within the control of the lessor and not subject to intervention by the lessee as a matter of law.

Because the contract establishes that the interstitial space at issue is outside the householder's control, whether plaintiff can establish the "cause" or "physical intrusion" necessary for a valid trespass-nuisance claim under the fact scenario presented is a question of fact for the jury. After completing a full review of all the documentary evidence filed or submitted by the parties and applying *Hadfield,* we conclude that plaintiff has alleged and presented sufficient record evidence to create a genuine issue of material fact allowing plaintiff to proceed with the cause of action for trespass-nuisance. For these reasons, the trial court did not err when it denied summary disposition in favor of defendants on the basis of MCR 2.116(C)(7). *Maskery, supra* at 613, quoting *Glancy, supra* at 583.

### IV. CLAIMS IN "CONTRACT"

The trial court found that plaintiff, as the representative of the Campbell/Brown householders, as well as the Fishes, as intended third-party beneficiaries, could maintain breach of contract claims. The court also stated that plaintiff could maintain a breach of warranty claim. Accordingly, the trial court denied defendants' motion for summary disposition on the contract claims pursuant to MCR 2.116(C)(8).

This Court reviews de novo a trial court's decision to grant summary disposition under MCR 2.116(C)(8). *Spiek v Dep't of Transportation,* 456 Mich 331, 337; 572 NW2d 201 (1998). MCR 2.116(C)(8) tests the legal sufficiency of the pleadings standing alone. *Maiden, supra* at 119-120. "The motion must be granted if no

factual development could justify the plaintiff's claim for relief." *Spiek, supra* at 337; *Maiden, supra* at 119.

When reviewing plaintiff's contract claims below, the trial court found that under *Mobil Oil Corp v Thorn*, 401 Mich 306; 258 NW2d 30 (1977), plaintiff could "maintain a tort action predicated upon a breach of contract to keep the premises in reasonable repair." The trial court stated that both the parties to the lease and the others in the household could sustain causes of action against defendant under the lease for a breach of contract claim and a breach of warranty claim for personal injury damages under *Mobil Oil*. The trial court also stated that the lease at issue contained additional obligations of both the landlord and the tenant that went above and beyond the requirements of the public housing laws, and, therefore, the preexisting duty doctrine did not preclude plaintiff's contract claims. Finally, regarding other nonlessees on the premises specifically, the trial court ruled that they could "maintain a breach of contract action as they were on the premises by consent and would have been subject to the landlord's duty of reasonable care to perform the contract provisions."

After carefully reviewing the substance of plaintiff's contract claims, we conclude that the claims are in fact merely recapitulations of the tort claims. Plaintiff relied on, and the trial court applied, the decision in *Mobil Oil*. In *Mobil Oil*, our Supreme Court stated that an action in tort may be brought by a tenant predicated on a lessor's breach of an agreement to make repairs. *Mobil Oil, supra* at 310-313. In other words, *Mobil Oil* stands for the proposition that lessees can recover *in tort* for personal injuries in actions sounding in contract. In applying *Mobil Oil* to this case, we are again left with the conclusion that although plaintiff's cause of action "sounds in contract" the issues are plainly tort issues.

Accordingly, the trial court should have analyzed the issues under MCR 2.116(C)(7) and tested whether the claims were barred by governmental immunity.

The governmental immunity act specifically states that:

> Except as otherwise provided in this act, a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function. Except as otherwise provided in this act, this act does not modify or restrict the immunity of the state from tort liability as it existed before July 1, 1965, which immunity is affirmed. [MCL 691.1407(1).]

There are only five statutory exceptions to governmental immunity, the "highway exception," MCL 691.1402, the "motor vehicle exception," MCL 691.1405, the "public building exception," MCL 691.1406, the "proprietary function exception," MCL 691.1413, and the "governmental hospital exception," MCL 691.1407(4).

Defendants were engaged in the "the exercise or discharge of a governmental function," namely the operation of low-income housing projects, MCL 125.657(b), as specifically contemplated by MCL 691.1407(1).[5] Therefore, without an applicable exception to governmental immunity, plaintiff's claims fail and summary disposition should have been granted under MCR 2.116(C)(7). Because of our resolution of the issues brought under the guise of contract, we need not address defendants' preexisting duty doctrine defense or any issues surrounding the maintenance of a breach of contract action for intended third-party beneficiaries.

V. CROSS-APPEAL

This Court reviews de novo a trial court's decision to

---

[5] Also, see our discussion in § V, part A.

grant summary disposition. *Spiek, supra* at 337. Defendants moved for summary disposition under MCR 2.116(C)(7), (C)(8), and (C)(10). MCR 2.116(C)(10) tests the factual sufficiency of a plaintiff's claim. *Maiden, supra* at 120. The trial court must consider the submitted evidence in the light most favorable to the nonmoving party. *Id.*; MCR 2.116(G)(5). Where the proffered evidence fails to establish that a disputed material issue of fact remains for trial, summary disposition is properly granted to the party so entitled as a matter of law. MCR 2.116(C)(10), (G)(4), (I)(1); *Maiden, supra.* Again, MCR 2.116(C)(8) tests the legal sufficiency of the pleadings standing alone and the motion must be granted if no factual development could justify plaintiff's claim for relief. *Maiden, supra* at 119; *Spiek, supra* at 337.

Once again, a motion under MCR 2.116(C)(7) " 'tests whether a claim is barred because of immunity granted by law, and requires consideration of all documentary evidence filed or submitted by the parties.' " *Maskery, supra* at 613, quoting *Glancy, supra* at 583. In ruling on a motion for summary disposition brought only under MCR 2.116(C)(7) asserting governmental immunity, the trial court is charged with completing a full review of " 'all documentary evidence filed or submitted by the parties.' " *Id.*

### A. PROPRIETARY FUNCTION

Plaintiff asserts on cross-appeal that the trial court erred in granting summary disposition to defendants on her claim based on the proprietary function exception to governmental immunity. Plaintiff contends that the exception may be applicable here because there is a question of fact regarding whether the Detroit Housing Commission is truly nonprofit or whether it is actually carrying out a proprietary function.

MCL 691.1413 states that governmental immunity does not preclude an action for bodily injury or property damages arising out of a governmental agency's performance of a proprietary function. A proprietary function is defined as any activity conducted for the purpose of producing a pecuniary gain or profit for the governmental agency, excluding any activity normally supported by taxes or fees. *Id.*; *Russell v Dep't of Corrections*, 234 Mich App 135, 138; 592 NW2d 125 (1999). Two tests must be satisfied in order for an activity to be considered a proprietary function: "[t]he activity (1) must be conducted primarily for the purpose of producing a pecuniary profit, and (2) it cannot be normally supported by taxes and fees." *Coleman v Kootsillas*, 456 Mich 615, 621; 575 NW2d 527 (1998).

The operation of low-income housing projects by municipal housing commissions is expressly authorized by statute. MCL 125.651 *et seq.* Among the powers specifically conferred upon such commissions is the power "to lease and/or operate any housing project or projects . . . ." MCL 125.657(b). Accordingly, defendants' operation of the Brewster-Douglas Housing Project constitutes a governmental function. Further, the municipal housing facilities act, MCL 125.677, precludes municipal housing commissions from operating public housing projects for a profit.

Plaintiff asserted below, and again on cross-appeal, that in 2000 the Brewster-Douglas Housing Project had revenues of over $4 million as her only evidence that the Detroit Housing Commission is actually performing a proprietary function. Evidence that an activity actually generates a profit is not dispositive, and the existence of a profit is relevant only to a determination of the governmental agency's intent. *Adam v Sylvan Glynn*

*Golf Course*, 197 Mich App 95, 97-98; 494 NW2d 791 (1992). The assertion of revenues is not the establishment of a profit.

On the bases of MCL 125.677 and the fact that plaintiff has not submitted evidentiary material to establish the existence of a profit so as to create a genuine issue of material fact, we conclude that defendants were not engaged in the exercise of a proprietary function and the trial court properly granted defendants' motion for summary disposition on the issue.

### B. VIOLATION OF HOUSING CODE

Plaintiff next argues on cross-appeal that the trial court erred in granting defendants' motion for summary disposition on plaintiff's count for violation of the housing code because genuine issues of material fact exist. Plaintiff asserts that her experts confirmed that the fire originated in the north wall of the first floor bedroom at the electrical outlet as a result of an electrical system malfunction and, therefore, defendants clearly violated the statutory provisions making it unlawful to keep or maintain a "dangerous building," pursuant to MCL 125.538 of the housing code. The trial court decided the issue under MCR 2.116(C)(10) only and found that there was no genuine issue of material fact related to MCL 125.538.

MCL 125.538 prohibits the maintenance of dangerous buildings and states specifically that, "[i]t is unlawful for any owner or agent thereof to keep or maintain any dwelling or part thereof which is a dangerous building . . . ." Plaintiff asserted that the condition of the building at issue met at least two of the definitions of a dangerous building as defined in MCL 125.539 and presented both expert and lay testimony supporting her

assertions. The two subsections plaintiff relied on from MCL 125.539 are as follows:

> (f) The building, structure, or a part of the building or structure is manifestly unsafe for the purpose for which it is used.

and

> (h) A building or structure used or intended to be used for dwelling purposes, including the adjoining grounds, because of dilapidation, decay, damage, faulty construction or arrangement, or for other reason, is unsanitary or unfit for human habitation, is in a condition that the health officer determines is likely to cause sickness or disease, or is likely to injure the health, safety, or general welfare of people living in the dwelling.

After reviewing the submitted admissible evidence in the light most favorable to the nonmoving party, we conclude that the trial court erred in finding that no disputed material issue of fact remained for trial. *Maiden, supra* at 120-121; MCR 2.116(G)(4). Our reading of the depositions provided by plaintiff's experts regarding the origination of the fire and the electrical system condition in the premises leaves us with the conclusion that a question does in fact remain regarding whether the electrical system condition was "manifestly unsafe" under MCL 125.539(f) or the premises were "unfit for human habitation" pursuant to MCL 125.539(h). For that reason, the trial court erred when it granted summary disposition in favor of defendants under MCR 2.116(C)(10).

However, our inquiry does not end there. As we concluded above, defendants' operation of the Brewster-Douglas Housing Project constitutes a governmental function. MCL 125.657(b). As such, defendants argued below and again on appeal that plaintiff cannot sustain a claim for violation of the housing code

against defendants because it is barred by the operation of governmental immunity. As we observed above, there are only five statutory exceptions to governmental immunity, none of which apply here.

While the housing code itself, specifically MCL 125.536, creates a cause of action by an occupant of a dwelling against the owner for damages, injunctive relief, or other relief for violation of the code, defendants were engaged in the "the exercise or discharge of a governmental function," namely the operation of low-income housing projects, as specifically contemplated by MCL 691.1407(1). Therefore, without an applicable exception to governmental immunity, plaintiff's claim fails and summary disposition should have been granted under MCR 2.116(C)(7). Because it is well settled that this Court will not reverse when the trial court reaches the correct result, albeit for a wrong reason, summary disposition stands. *Ellsworth v Hotel Corp of America,* 236 Mich App 185, 190; 600 NW2d 129 (1999).[6]

### V. CONCLUSION

Encompassed in our review were plaintiff's tort claims; those explicitly labeled as such as well as those framed in contract but ultimately sounding in tort. We also reviewed the claims brought on cross-appeal. After a careful review of the allegations and record evidence, and a proper analysis under the court rule, we conclude that plaintiff's tort claims for nuisance in fact and trespass-nuisance survive in avoidance of governmental immunity, but that the trial court should have granted summary disposition on the torts of nuisance per se and

---

[6] Plaintiff is not precluded from presenting relevant evidence relating to the alleged housing code violations during the maintenance of her other causes of action in the trial court.

trespass, as well as the misnamed "contract" claims. Regarding the issues brought on cross-appeal, we affirm the trial court's grant of summary disposition on both the proprietary function and housing code violation claims.

Affirmed in part, reversed in part, and remanded.

White, J., I concur in the result only.