MARCHYOK v CITY OF ANN ARBOR

Docket No. 242409. Submitted November 5, 2003, at Lansing. Decided February 24, 2004, at 9:05 A.M.

Katharine Marchyok and others brought a wrongful death action in the Washtenaw County Trial Court, Circuit Court Division, against the city of Ann Arbor after Janis Marchyok was struck and killed by a bus while she was walking in a crosswalk at the intersection of two streets. The plaintiffs alleged that the defendant had notice of the dangerous conditions at the intersection and should be held liable under MCL 257.610(a), which provides that local authorities shall place and maintain such traffic control devices upon highways under their jurisdiction as they may deem necessary to control traffic, and under MCL 691.1402, the highway exception to governmental immunity. The court, David S. Swartz, J., granted summary disposition for the defendant on the ground of governmental immunity. The plaintiffs appealed.

The Court of Appeals *held*:

1. MCL 257.610(a) grants municipalities with discretion over the placement and maintenance of traffic control devices on highways under their jurisdiction, and does not contemplate the imposition of a duty the breach of which subjects municipalities to tort liability. There is no tort liability for a breach of the duties imposed by MCL 257.610(a).

2. A municipality can be liable under the highway exception to governmental immunity, MCL 691.1402, only for negligence in repairing and maintaining the roadbed actually designed for public vehicular travel. Traffic control devices are not part of roadbeds. Thus, the highway exception to governmental immunity does not apply to this case.

Affirmed.

O'CONNELL, P.J., dissenting, stated that the statutory definition of "highway," MCL 691.1401(e), includes crosswalks and that, under MCL 691.1402, a person may recover damages for personal injury or property damage caused by a city's failure to keep a crosswalk under its jurisdiction in reasonable repair and in a condition reasonably safe and fit for travel. Furthermore, MCL 691.1402a indicates legislative intent to include defective traffic control devices

and other defective installations as part of the highway exception to municipal liability.

HIGHWAYS — TRAFFIC CONTROL DEVICES — MUNICIPALITIES — LIABILITY.
A municipality incurs no tort liability for the failure to install or maintain a traffic control device for a highway under its jurisdiction (MCL 257.610[a], 691.1402).

*Chapman and Associates, P.C.* (by *Brian J. Richtarcik*), for the plaintiffs.

*Robert W. West*, Assistant City Attorney, for the defendant.

Before: O'CONNELL, P.J., and JANSEN and WILDER, JJ.

JANSEN, J. In this wrongful death action, plaintiffs Katharine Marchyok, Delores Foster, Patrick Marchyok, Michael Marchyok, and Richard Foster appeal as of right from an order granting defendant city of Ann Arbor's motion for summary disposition. We affirm.

The present case arises from an accident that occurred at the intersection of Catherine Street and Glen Street in Ann Arbor, Michigan. The decedent was walking west on the sidewalk on the north side of Catherine Street. While the pedestrian signal was showing "walk," the decedent attempted to cross Glen Street. At this same moment, the traffic light for westbound vehicles on Catherine Street turned green. The decedent was struck and killed by a bus turning right on to Glen Street.

Plaintiffs brought suit. Defendant moved for summary disposition, relying on the doctrine of governmental immunity. The trial court granted defendant's motion for summary disposition on the basis of governmental immunity.

Plaintiffs first argue that under MCL 257.610(a), municipalities must provide such traffic control devices as they deem necessary to regulate traffic and that defendant had notice of the dangerous conditions at the intersection in question yet failed to correct the problem. Plaintiffs contend that this constituted breach of an affirmative duty and created a cause of action against defendant. We disagree.

We review de novo decisions to grant or deny summary disposition. *Veenstra v Washtenaw Country Club*, 466 Mich 155, 159; 645 NW2d 643 (2002). And the same standard applies to the interpretation and application of statutes. *Eggleston v Bio-Medical Applications of Detroit, Inc*, 468 Mich 29, 32; 658 NW2d 139 (2003).

The Michigan Supreme Court has distinguished statutes that impose a duty to install traffic control devices from those that create causes of action for failing to maintain highways. *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 181; 615 NW2d 702 (2000). An individual can seek to have a municipality held liable under the highway exception to governmental immunity pursuant to MCL 691.1402. *Id.* But the duty "implicating the installation, maintenance, repair, or improvement of traffic signs is expressly created" by a separate provision. *Id.*

The statute imposing the duty to install traffic control devices, MCL 257.610(a), provides, in relevant part, the following:

> Local authorities . . . shall place and maintain such traffic control devices upon highways under their jurisdiction as they may deem necessary to indicate and to carry out the provisions of this chapter or local traffic ordinances or to regulate, warn or guide traffic.

Our Supreme Court emphasized the point that munici-
palities are required to do what they deem necessary
to control traffic. *Nawrocki, supra* at 182. The statute
grants municipalities discretion. *Id.* The statute does
not contemplate the "imposition of a duty the breach
of which subjects the agencies to tort liability." *Id.* at
181-182.

Because there is no tort liability for a breach of the
duties imposed by MCL 257.610(a), plaintiffs fail to
state a claim on which relief can be granted. There-
fore, upon review de novo, we find that summary dis-
position under MCR 2.116(C)(8) was proper.

Plaintiffs next contend that defendant can be held
liable under the highway exception to governmental
immunity for the negligent failure to install or main-
tain traffic control devices. Plaintiffs argue that our
Supreme Court's decision in *Nawrocki, supra,* only
excludes the state and county road commissioners
from such liability. We disagree.

Summary disposition under MCR 2.116(C)(7) "is
proper when a claim is barred by immunity granted
by law." *Fane v Detroit Library Comm,* 465 Mich 68,
74; 631 NW2d 678 (2001). In order to get past such a
motion, the plaintiff must "allege facts justifying the
application of an exception to governmental immu-
nity." *Id.*

MCL 691.1407(1) grants immunity from tort liability
to agencies in "exercising or discharging governmen-
tal functions." *Weaver v Detroit,* 252 Mich App 239,
243; 651 NW2d 482 (2002). The act confers broad
immunity and its exceptions must be narrowly con-
strued. *Nawrocki, supra* at 158.

Our Supreme Court has specifically applied this
narrow construction to the highway exception pro-

vided in MCL 691.1402. *Nawrocki, supra* at 158. In *Nawrocki*, the Court held that the state and county road commissions are only liable for negligence in repairing and maintaining the ' "roadbed actually designed for public vehicular travel," ' not traffic control devices. *Id.* at 180, quoting *Scheurman v Dep't of Transportation*, 434 Mich 619, 631; 456 NW2d 66 (1990). And the Court further noted that "traffic signals and signs are not implicated in the broad definition of highway in MCL 691.1401(e)." *Nawrocki, supra* at 182 n 37. In a case involving a municipality, and where a pedestrian was killed by a falling light pole, this Court held "that, as with traffic signals and signs," the plain language of the statute does not support the conclusion that streetlight poles are part of the definition of the term "highway" in MCL 691.1401(e). *Weaver, supra* at 245, citing *Nawrocki, supra* at 180, 182 n 37.

Plaintiffs cite *Cox v Dearborn Hts*, 210 Mich App 389; 534 NW2d 135 (1995), in support of their argument that traffic control devices are part of the highway for purposes of a municipality's liability for failure to repair and maintain traffic control devices. Our Supreme Court in *Nawrocki, supra* at 182 n 37, noted the following:

> The dissent accuses us of "shifting" the liability for traffic control devices, including traffic signs, from the state and county road commissions, to local municipalities. While the purpose of our holding today is merely to return to a principled application of the plain language of the highway exception, we are constrained to respond to the dissent's misapprehension of the governmental immunity statute.
>
> Clearly, traffic signals and signs are not implicated in the broad definition of "highway" in MCL 691.1401(e); MSA 3.996(101)(e): " 'Highway' means a public highway, road, or

street that is open for public travel and includes bridges, sidewalks, trailways, crosswalks, and culverts on the highway. The term highway does not include alleys, trees, and utility poles." . . . However, because traffic control devices are clearly not implicated in the broad definition of "highway," there can be no "shifting" of liability from the state and county road commissions to local municipalities.

Plaintiffs, in this case, indicated that footnote 37 from *Nawrocki, supra,* was dicta and that *Cox, supra,* supported their argument. But this Court in *Carr v Lansing,* 259 Mich App 376, 384-388; 674 NW2d 168 (2003), recently determined that the footnote was more than dicta and implicitly overruled *Cox, supra,*[1] as follows:

The [*Nawrocki*] Court's comments in footnote 37 [of *Nawrocki, supra,*] are more than mere dicta; they must be read as implicitly overruling *Cox.* The "governmental immunity statute as a whole" does not permit tort liability for inadequate signage or obstructed sight lines. *Nawrocki, supra* at 182. See also [*Hanson v Mecosta Co Rd Comm'rs,* 465 Mich 492, 502-503; 638 NW2d 396 (2002).]

Indeed, in cases decided after *Nawrocki,* this Court has extended the holding . . . to municipalities. In *Weakley v Dearborn Hts,* 240 Mich App 382, 387; 612 NW2d 428 (2000), . . . this Court held that under the highway exception a municipality had a "duty to provide barriers or warning signs" with regard to points of special hazard. Our Supreme

---

[1] In response to the dissent, we note that it is interesting that the dissent cites MCR 7.215(J)(1), as this is the same rule that requires us to follow the precedent established by *Carr, supra.* We further note that there has been a judicial practice of, and there is authority to support, a panel of this Court finding that a binding opinion of another panel of this Court has been implicitly overruled by a subsequent Supreme Court decision. See *Barnes v Int'l Business Machines Corp,* 212 Mich App 223, 225-226; 537 NW2d 265 (1995); *Zwolinski v Dep't of Transportation (After Remand),* 210 Mich App 496, 499; 517 NW2d 852 (1995); *People v Alexander (After Remand),* 207 Mich App 227, 230 n1; 523 NW2d 653 (1994); see also *Gilmore v Parole Bd,* 247 Mich App 205, 214; 645 NW2d 345 (2001).

Court . . . remanded *Weakley* for reconsideration in light of *Nawrocki. Weakley, supra*, 463 Mich 980 (2001). On reconsideration, *Weakley v Dearborn Hts (On Remand)*, 246 Mich App [322, 328; 632 NW2d 177] (2001), this Court cited *Cox, supra*, but held that the city "did not have a duty to make the sidewalk reasonably safe by placing a barrier or warning device around the portion of the sidewalk that was under repair."

But this Court in *Ridley* [*v Detroit (On Remand)*, 246 Mich App 687, 691; 639 NW2d 258 (2001)], held that [*Nawrocki, supra*] did not apply to municipalities; consequently, a city could be liable under the highway exception for inadequate illumination because a "streetlight is not a utility pole and is not excluded by definition from the highway exception to governmental immunity." A special panel of this Court . . . . disagreed with the *Ridley* panel's analysis. *Weaver, supra*, 252 Mich App at 245. The special panel found the distinction the *Ridley (On Remand)* panel relied on between the state and county road commissions on the one hand, and municipalities on the other hand, to be "insignificant . . . [in light of] the central theme of the Supreme Court's decision in *Nawrocki* . . . that 'the immunity conferred upon governmental agencies is broad, and the statutory exceptions thereto are to be narrowly construed[,]' *Nawrocki, supra* at 158, [and that] 'no action may be maintained under the highway exception unless it is clearly within the scope and meaning of [MCL 691.1402(1)].'" *Weaver, supra*, 252 Mich App 245, quoting *Weakley, supra* at 326 (emphasis in original). This Court held the city was immune from claims that it negligently maintained a streetlight pole because "a streetlight pole is not part of the 'highway'" as defined in MCL 691.1401(e). *Weaver, supra*, 252 Mich App 245. Although the *Weaver* special panel did not specifically reach the question of whether the *Ridley (On Remand)* panel correctly held that a municipality could be liable for inadequate street lighting, *Weaver, supra*, 252 Mich App 246, our Supreme Court thereafter vacated *Ridley (On Remand)* and remanded it again for reconsideration again in light of *Weaver, supra*, 252 Mich

App 239. *Ridley v City of Detroit (Ridley v Collins)*, 468 Mich 862 (2003).

On reconsideration in light of *Weaver*, the *Ridley (On Second Remand)* panel concluded that "because illumination is not part of the actual highway, the highway exception to governmental immunity does not apply and defendant city was entitled to judgment as a matter of law." *Ridley v City of Detroit (On Second Remand)*, 258 Mich App 511, 513; 673 NW2d 448 (2003). . . .

After reviewing *Weaver, supra*, the *Ridley (On Second Remand)* panel reluctantly concluded that illumination "is not included within the statutory definition of 'highway' [and] does not represent a defect in the highway itself because it is not part of the highway." *Id.* at 515. The panel reasoned that if inadequate signage is not within the highway exception, neither is inadequate illumination. . . .

                        *     *     *

. . . [T]raffic control or warning signs, or sightlines, are not part of the "highway" as MCL 691.1401(e) defines that term. And in light of the emerging case law, it is clear that *Cox, supra*, has been overruled to the extent that it holds that the highway exception includes a "duty to maintain . . . highways . . . [that] encompasses the duty to install adequate traffic signs." *Cox, supra* at 394-395.

Because traffic control devices are not part of the highway under MCL 691.1401(e), we find that the highway exception to governmental immunity does not apply to the instant case. See *Carr, supra*; see also *Nawrocki, supra* at 182 n 37; *Weaver, supra* at 245. Therefore, upon review de novo, we conclude that the trial court did not err in granting defendant's motion for summary disposition under MCR 2.116(C)(7).

Affirmed.

WILDER, J., concurred.

O'CONNELL, P.J. (*dissenting*). I respectfully dissent. The primary issue in this case concerns the definition of "highway" as it applies to municipalities, and the scope of a municipality's responsibility for a "highway" within its jurisdiction.

Unquestionably, the statutory definition of "highway" includes "crosswalks." MCL 691.1401(e). Therefore, according to the plain language of MCL 691.1402, a person may recover damages for personal injury or property damage caused by a city's failure "to keep a [crosswalk[1]] under its jurisdiction in reasonable repair and in a condition reasonably safe and fit for travel . . . ." In contrast to county road commissions and the state,[2] the Legislature did not limit a plaintiff's recovery from municipalities to damages arising only from defects in the "improved portion of the highway designed for vehicular travel." *Id.* It could have applied this "roadbed" restriction[3] to cities as well, but it did not. *Farrington v Total Petroleum, Inc*, 442 Mich 201, 210; 501 NW2d 76 (1993). I would follow established and binding precedent and reiterate that traffic control devices are part of the "high-

---

[1] The fact that a crosswalk falls under the definition of "highway" found in MCL 691.1401(e) justifies the substitution of the word "crosswalk" for the word "highway" in the quotation.

[2] County road commissions and the state are not liable for crosswalks by the express language of MCL 691.1402. However, this distinction only underscores the difference between this case, which deals with the city of Ann Arbor, and the cases cited by the majority that deal with county road commissions and the state.

[3] In *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 183; 615 NW2d 702 (2000), the Supreme Court explained the restriction by suggesting that the Legislature severed a highway into two parts—"the portion of the roadbed designed for vehicular travel," and the balance of the highway. *Nawrocki* proposes that the duty of the state and county road commissions extends only to the improved portion. Municipalities, however, are responsible for the entire highway, including sidewalks, culverts, crosswalks, etc. MCL 691.1402(1); MCL 691.1401(e).

way" and incorporated into the highway exception to municipal immunity. *Cox v Dearborn Hts*, 210 Mich App 389, 397; 534 NW2d 135 (1995). By holding otherwise, the majority grafts a severe and unintended limitation onto the legislative design and seriously erodes the municipal accountability that the Legislature intended to create.

The majority's analysis posits that *Cox* lacks value as binding precedent today, but such a declaration requires close scrutiny of the majority's analysis and cited authority. The majority incorrectly states that our Supreme Court in *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 180; 615 NW2d 702 (2000), based its decision regarding the liability of county road commissions and the state on the understanding that traffic control devices were not part of the definition of "highway" under MCL 691.1401(e). On the contrary, *Nawrocki* expressly limited its analysis to the clear legislative intent that the state and the county road commissions were only liable for defects to the roadbed according to the fourth sentence of MCL 691.1402(1). *Nawrocki, supra* at 179-180, 183-184. Therefore, the majority misplaces its reliance on any substantive portion of *Nawrocki*.

Furthermore, before the footnote that contains the dicta that the majority cites as dispositive, *Nawrocki* recognizes that the Legislature's definition of "highway" could otherwise arguably include traffic control devices if it were not for the fourth sentence of MCL 691.1402(1). *Nawrocki, supra* at 182 n 36. The statute's fourth sentence plainly does not apply to this case, so contrary to the ruling in *Carr v Lansing*, 259 Mich App 376, 384; 674 NW2d 168 (2003), *Nawrocki* refrained from deciding whether the term "highway" could encompass traffic control devices as the term

pertains to municipalities. The expressly limited application of *Nawrocki* to the duty of the state and counties should dispose of any notion that *Nawrocki* overruled *Cox*, implicitly or otherwise.[4]

*Carr* obviously conflicts with *Cox*. We released *Cox* in 1995 and released *Carr* in 2003. According to MCR 7.215(J)(1), the first opinion released by this Court is binding on subsequent panels. *Novak v Nationwide Mut Ins Co*, 235 Mich App 675, 690; 599 NW2d 546 (1999). Moreover, *O'Hare v Detroit*, 362 Mich 19; 106 NW2d 538 (1960), which is consistent with *Cox*, is a Supreme Court decision. Inexplicably, the majority opinion adopts the reasoning of *Carr* and improperly fails to acknowledge the significance of *O'Hare*. See *Soltis v First of America Bank-Muskegon*, 203 Mich App 435, 441; 513 NW2d 148 (1994).

Delving deeper into the cases that support the majority's position fails to unearth any overriding justification for holding contrary to our established precedent. For example, the majority relies, as did *Carr*, on the decision in *Weaver v Detroit*, 252 Mich App 239, 243; 651 NW2d 482 (2002), but that decision dealt with a streetlamp and barely mentioned *Cox*. Moreover, none of the majority's supporting cases considered *O'Hare, supra* at 23, which expressly recognizes municipal liability for installed but improperly maintained signage. In *O'Hare, supra* at 23-24, our Supreme Court stated, "It seems obvious to us that once a municipality has decided to exercise the discretion vested in it to declare one street a through street and erect a stop sign facing the subordinate

---

[4] I am unfamiliar with the judicial practice of overruling binding precedent by implication, so I leave it to the majority to explain the practical effects of such a doctrine on our obligations under MCR 7.215(J)(1).

street, the stop sign becomes an important part of the physical appurtenances of the street."

Because our Supreme Court has never overruled either *Cox* or *O'Hare*, the majority can only assume that these precedential cases no longer remain in force. Similarly, *Carr* improperly fails to follow *Cox* and *O'Hare* where it should, and also completely avoids the substance of the municipal issue by declaring its stop sign part of a *state* intersection. *Carr, supra* at 381-383. Therefore, contrary to the majority's suppositions, *Carr* does not bind our decision today, and the majority misplaces its reliance on it.

In contrast to the questionable assumptions about legislative intent adopted by the majority and its cited cases, the Legislature, in MCL 691.1402a, plainly indicates its intent to include defective traffic control devices and other defective "installations" as part of the highway exception to municipal immunity. The statute begins by limiting a municipality's liability for defects on county roads. It then adds, however, that the caveat for county roads "does not prevent or limit a municipal corporation's *liability* if . . . 30 days before the occurrence . . . the municipal corporation knew . . . of the existence of a defect in a sidewalk, trailway, crosswalk, or other *installation* outside of the improved portion of the highway designed for vehicular travel." MCL 691.1402a (emphasis added). Given this language, it is irrational to assume that the Legislature did not intend to hold municipalities liable for defective installations, such as traffic control devices.[5] Such a dismissive reading of this statute

---

[5] When the three statutes are read together, the Legislature's design becomes apparent. It makes sense for individual municipalities to bear the cost of known defective installations under their control rather than hold-

improperly renders the "installation" language mere surplusage and its meaning nugatory. It is also irrational to assume that the Legislature intended to hold a municipality liable for installations on county roads but not on roads completely under its jurisdiction.[6] The legislative edict is clear—Municipalities, repair your highways or face the consequences.[7] *Cox* and *O'Hare* correctly hold municipalities liable for defective installations, including traffic control devices, and we are bound to follow those cases today.

---

ing the entire state or the county liable for those defects. The statutory design recognizes that individual citizens may not possess the political strength to change a defect in a different county or a different township on the other side of their county, but can force their *local* governments to correct any defects. By holding municipalities liable for defective installations, the Legislature protects individual citizens from the catastrophic results of dangerous sidewalks, dilapidated footbridges, malfunctioning stoplights, and other highway defects by putting responsibility for such defects on the political organizations that have the strongest incentive to correct them—municipalities. More important than the Legislature's justifications, however, is its intent. Only by closing one's eyes to the language in MCL 691.1402a can one hold that it manifests the Legislature's ignorance or whimsy rather than a simple intent to hold municipalities liable for reasonable maintenance of their installations. By liberating municipalities from their designated responsibility, the majority undermines the legislative plan and leaves injured citizens to pay for the ramifications that flow from defective maintenance of their cities' infrastructures. Therefore, when the majority undermines the system designed by the Legislature, it not only oversteps its function of enforcing the law as written but also unnecessarily fails to serve the interests of this state's citizenry.

[6] I note that any strict limitation of the definitional language in MCL 691.1401 to those objects specifically included in the definition of "highway" would render nugatory all the exclusions that follow the list of included items. The definition would not need to exclude anything if the Legislature intended to include only the listed items. The more logical approach recognizes that the Legislature merely intended to outline the scope of the term "highway" by providing concrete examples of included and excluded items. While not as clear-cut as we may like, the Legislature employed this method as a means of leaving close questions to the judiciary: a responsibility we should accept rather than avoid.

[7] The Legislature intentionally allows municipalities to face suit as a means of ensuring that our older cities will diligently repair their roads, including the roads' appurtenances. The threat of potential lawsuits keeps our cities' roads, sidewalks, and crosswalks safe and in constant repair.

Because Ann Arbor's alleged failure to keep the crossing signal repaired was ostensibly a failure to "keep" the crosswalk in "a condition reasonably safe *and* fit for travel," I would remand to the trial court for its preliminary determination of this issue. MCL 691.1402 (emphasis added).