JOHNSON-McINTOSH v CITY OF DETROIT

Docket No. 244349. Submitted September 13, 2004, at Lansing. Decided
May 5, 2005, at 9:25 a.m.

Denise Johnson-McIntosh and Alvin McIntosh, as next friends of
Daesha Johnson, a minor, brought an action in the Wayne Circuit
Court against the city of Detroit and others for injuries Johnson
sustained in a traffic accident. Johnson alleged that the city was
liable under MCL 691.1402a for failing to maintain or repair a
traffic signal. The court, Daphne Means Curtis, J., denied the city's
motion for summary disposition, which was based on governmen-
tal immunity. The Court of Appeals, COOPER, P.J., and GRIFFIN and
BORRELLO, JJ., reversed the trial court's decision solely because it
was required by MCR 7.215(J) to follow *Marchyok v City of Ann
Arbor*, 260 Mich App 684 (2004), which held that, because the
highway exception to governmental immunity does not apply, a
municipality is not liable for injuries caused by defective traffic
control devices. The Court convened a special panel to resolve the
conflict between this case and *Marchyok*, and vacated its opinion
in this case. 261 Mich App 801 (2004).

After consideration by the special panel, the Court of Appeals
*held*:

The city has governmental immunity from liability for the
injury caused by the inoperative traffic signal. A governmental
agency has a duty to maintain a highway under its jurisdiction in
reasonable repair to keep the highway reasonably safe and conve-
nient for public travel. A traffic signal, however, is not a part of the
highway as defined in MCL 691.1401(e), and the highway excep-
tion to governmental immunity does not impose a duty on munici-
palities to install, maintain, repair, or improve traffic signals.

Reversed and remanded for entry of an order of dismissal.

METER, J., dissenting, would remand for further proceedings.
The parties appear to disagree regarding whether the traffic signal
at issue controlled the traffic on a noncounty or a county highway.
If this case involves a traffic signal on a noncounty highway, the
city must maintain the highway in reasonable repair, and this duty
is not limited under MCL 691.1402 to the improved portion of the
highway designed for vehicular travel. The question, then, is

whether a traffic signal is included within the definition of
"highway." It is a matter of common sense that the duty to
maintain a highway entails the proper maintenance of a traffic
signal that controls the flow of traffic on that highway. While the
definition of "highway" in MCL 691.1401(e) does not specifically
list the phrases "traffic signals" and "traffic control devices," those
terms are implicit within the term "highway." It would be incon-
gruous for a municipality to have a duty to maintain items such as
the road surface, but not have a duty to maintain traffic signals,
which are crucial to the safe use of a highway by pedestrians and
vehicles. Precedent does not require a contrary conclusion. Under
this analysis, the city was subject to liability. If this case involves a
traffic signal on a county highway, MCL 691.1402a indicates that
the city may be liable for improperly maintaining portions of the
highway outside the improved portion designed for vehicular
travel if the city had notice of the defect that caused the injury.
Either way, the case should be remanded for further proceedings.

GOVERNMENTAL IMMUNITY — HIGHWAY EXCEPTION — TRAFFIC CONTROL DEVICES
    — MUNICIPALITIES.

   A traffic signal is not part of a highway as defined in the govern-
   mental immunity statute, and the highway exception to govern-
   mental immunity does not impose a duty on a municipality to
   install, maintain, repair, or improve traffic signals (MCL
   691.1401[e], 691.1402, 691.1402a).

*Theophilus E. Clemons* for the plaintiff.

*Ruth C. Carter*, Corporation Counsel, and *Joanne D.
Stafford*, Supervising Assistant Corporation Counsel,
for the city of Detroit.

Before: OWENS, P.J., and SAAD, BANDSTRA, SMOLENSKI,
METER, DONOFRIO, and FORT HOOD, JJ.

DONOFRIO, J. Pursuant to MCR 7.215(J), this Court
convened a special panel to resolve the conflict between
the prior opinion in this case[1] and *Marchyok v City of*

---

[1] The opinion in this case was vacated pursuant to MCR 7.215(J)(5) in
the order convening this special panel. *Johnson-McIntosh v Detroit*, 261
Mich App 801 (2004).

*Ann Arbor*, 260 Mich App 684; 679 NW2d 703 (2004). These cases involve the interpretation of MCL 691.1402(1), the highway exception to governmental immunity, and MCL 691.1402a, which concerns a municipality's duty with regard to county highways. In *Marchyok, supra* at 691, the Court found that a municipality is immune from liability under the highway exception for injuries caused by defective traffic control devices. The original *Johnson-McIntosh* panel followed the *Marchyok* panel's holding and reversed the trial court, but only because it was required to do so pursuant to MCR 7.215(J). Because no basis currently exists in Michigan law for the proposition that a governmental entity, including a municipality, is subject to liability for the failure to repair and maintain traffic control devices, we adopt the holding in *Marchyok* and reverse the decision of the trial court, as the initial *Johnson-McIntosh* panel concluded.

## I. SUBSTANTIVE FACTS AND PROCEDURE

We adopt the facts and procedural history of the case as set out in *Johnson-McIntosh, supra* at 801-802:

> On June 25, 2001, Tommy Nathan McGee III was driving southbound on Pennington Road in the city of Detroit with Daesha Johnson as his passenger. McGee drove through the intersection of West Seven Mile Road, and as a result of an inoperative traffic signal, collided with another vehicle and then ran into a tree. Johnson was injured and brought suit through her next friends against defendant city of Detroit, alleging a breach of duty under MCL 691.1402a to maintain and repair all installations, including traffic signals, on portions of county highways outside the improved portion designed for vehicular travel.[3]
>
> Defendant responded to plaintiffs' claims with its initial motion for summary disposition. Defendant asserted that plaintiffs' claims were barred by governmental immunity

under MCL 691.1402(1). Defendant, relying on *Nawrocki v Macomb Co Rd Comm*, contended that municipalities are immune from liability for injuries caused by defective traffic signals.[4] The trial court denied defendant's initial motion without prejudice, finding that, as *Nawrocki* involved claims against a *county*, it was inapplicable to the facts of this case.

This Court subsequently rendered its opinion in *Weaver*,[2] explicitly extending the *Nawrocki* holding with regard to streetlight poles to municipalities. As a result, defendant filed a renewed motion for summary disposition based on governmental immunity,[3] asserting that municipalities are now governmentally immune from tort liability arising from defective traffic signals. The trial court determined that if *Weaver* were applied, defendant would be governmentally immune from liability. However, the trial court declined to apply *Weaver*, as this Court did not expressly rule that the decision was to apply retroactively.

---

[3] Plaintiffs also alleged claims against McGee and his father, Tommy Nathan McGee, Jr., as the owner of the vehicle, but these claims are not relevant to this appeal.

[4] *Nawrocki v Macomb Co Rd Comm*, 463 Mich 143, 172-184; 615 NW2d 702 (2000). *Nawrocki* was consolidated on appeal with *Evens v Shiawassee Co Rd Comm'rs*. *Evens* involved a county's liability with regard to defective traffic control devices while *Nawrocki* involved a defective roadbed. The consolidated appeal will be referred to as *Nawrocki* throughout.

---

[Emphasis in original.]

## II. STANDARD OF REVIEW

"We review de novo a trial court's decision on a

---

[2] *Weaver v Detroit*, 252 Mich App 239; 651 NW2d 482 (2002).

[3] Defendant's motion for summary disposition was brought pursuant to both MCR 2.116(C)(7) and MCR 2.116(C)(8).

motion for summary disposition under MCR 2.116(C)(7) to determine if the moving party was entitled to judgment as a matter of law." *McDowell v Detroit*, 264 Mich App 337, 346; 690 NW2d 513 (2004). "A motion under MCR 2.116(C)(7) ' "tests whether a claim is barred because of immunity granted by law, and requires consideration of all documentary evidence filed or submitted by the parties." ' " *Id.*, at 345, quoting *Maskery v Univ of Michigan Bd of Regents*, 468 Mich 609, 613; 664 NW2d 165 (2003), quoting *Glancy v City of Roseville*, 457 Mich 580, 583; 577 NW2d 897 (1998); see also MCR 2.116(G)(5).

"This Court reviews de novo a trial court's decision to grant summary disposition under MCR 2.116(C)(8)." *McDowell, supra* at 354, citing *Spiek v Dep't of Transportation*, 456 Mich 331, 337; 572 NW2d 201 (1998). "MCR 2.116(C)(8) tests the legal sufficiency of the pleadings standing alone." *McDowell, supra* at 354, citing *Maiden v Rozwood*, 461 Mich 109, 119-120; 597 NW2d 817 (1999). " 'The motion must be granted if no factual development could justify the plaintiff's claim for relief.' " *McDowell, supra* at 354-355, quoting *Spiek, supra* at 337; see also *Maiden, supra* at 119.

### III. ANALYSIS

Absent an exception, a governmental agency is immune from tort liability if the agency was engaged in a governmental function. MCL 691.1407(1); *Maskery, supra* at 613. The highway exception to governmental immunity, MCL 691.1402(1), provides:

Except as otherwise provided in section 2a, each governmental agency having jurisdiction over a highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. A person who sustains bodily injury or damage to his or her property

by reason of failure of a governmental agency to keep a highway under its jurisdiction in reasonable repair and in a condition reasonably safe and fit for travel may recover the damages suffered by him or her from the governmental agency. . . . The duty of the state and the county road commissions to repair and maintain highways, and the liability for that duty, extends only to the improved portion of the highway designed for vehicular travel and does not include sidewalks, trailways, crosswalks, or any other installation outside of the improved portion of the highway designed for vehicular travel.

Section 2a, MCL 691.1402a, provides limited immunity for a municipality with regard to the portions of county highways not designed for vehicular travel that fall within its borders. Specifically, MCL 691.1402a(1) provides:

Except as otherwise provided by this section, a municipal corporation has no duty to repair or maintain, and is not liable for injuries arising from, a portion of a county highway outside of the improved portion of the highway designed for vehicular travel, including a sidewalk, trailway, crosswalk, or other installation. This subsection does not prevent or limit a municipal corporation's liability if both of the following are true:

(a) At least 30 days before the occurrence of the relevant injury, death, or damage, the municipal corporation knew or, in the exercise of reasonable diligence, should have known of the existence of a defect in a sidewalk, trailway, crosswalk, or other installation outside of the improved portion of the highway designed for vehicular travel.

(b) The defect described in subdivision (a) is a proximate cause of the injury, death, or damage.

The definition of "highway" for purposes of this statute is found in MCL 691.1401(e):

"Highway" means a public highway, road, or street that is open for public travel and includes bridges, sidewalks,

trailways, crosswalks, and culverts on the highway. The term highway does not include alleys, trees, and utility poles.

In *Chaney v Dep't of Transportation*, 447 Mich 145, 158; 523 NW2d 762 (1994) (opinion of BRICKLEY, J.), our Supreme Court stated that "the improved portion of a highway designed for vehicular travel" included installations physically located within the roadbed and those installations physically located outside the roadbed "that directly and integrally affect safe vehicular travel on this improved portion." The Supreme Court noted that its decision was consistent with "clear" precedent. *Id.*, citing *Gregg v State Hwy Dep't*, 435 Mich 307; 458 NW2d 619 (1990), and *Roy v Dep't of Transportation*, 428 Mich 330; 408 NW2d 783 (1987).

Two years later, the Supreme Court returned to the "still-unsettled issue of the highway exception . . . ." *Pick v Szymczak*, 451 Mich 607, 610; 548 NW2d 603 (1996). In determining that county road commissions have a duty to erect traffic signs to ensure that the portion of the road designed for vehicular travel remains reasonably safe, the Supreme Court noted that it was properly interpreting the statute in light of "our undeniably fractured case law precedents . . . ." *Id.* at 621-622, 624.

In *Nawrocki*, our Supreme Court held that traffic control devices are not included in the definition of "highway" provided in MCL 691.1401(e), and therefore do not fall within the highway exception provided in MCL 691.1402(1). The Supreme Court stated that it had a duty to narrowly construe exceptions to the broad grant of governmental immunity provided in the statute. *Nawrocki, supra* at 175. While discussing the highway exception, our Supreme Court counseled that the statutory definition of "highway" does not include

conditions that may arise from hazards or special dangers that integrally affect the highway, but are outside the portion actually designed for vehicular travel. *Id.* at 176-177. And it further stated that the statute does not impose a duty to install, maintain, repair, or improve traffic control devices. *Id.* at 180, 184. As a result, the *Nawrocki* Court expressly overruled *Pick* and held that the plain language of the highway exception includes only the " 'traveled portion, paved or unpaved, of the roadbed actually designed for public vehicular travel.' " *Nawrocki, supra* at 180, quoting *Scheurman v Dep't of Transportation,* 434 Mich 619, 631; 456 NW2d 66 (1990). Furthermore, in a footnote addressing the dissent, the *Nawrocki* Court stated:

> The dissent contends that "[t]he plain meaning of the words 'improved portion of the highway designed for vehicular travel' connotes a broader concept than just the surface of the road, itself." [463 Mich at 188 (KELLY, J. dissenting).] We are convinced, however, that quite the opposite is true; while the term "highway" may be broad and potentially ambiguous, the phrase "improved portion" clearly narrows the term "highway" to its physical structure, and the phrase "designed for vehicular travel" further narrows "highway" to the physical roadbed itself. *Thus, the dissent is simply wrong, in our judgment, when it states that the language of the highway exception "leaves uncertain whether the space above the highway containing traffic lights is included."* [463 Mich at 189.] [*Nawrocki, supra* at 175 n 30 (emphasis added).]

Hence, construed narrowly, the phrase "improved portion" limits the meaning of "highway" to the physical structure of the highway, and the phrase "designed for vehicular travel" further limits the meaning to the physical roadbed alone. *Id.*

In *Nawrocki,* our Supreme Court was "convinced that *Pick* . . . contradicts the plain language of the

highway exception." *Id.* at 183. Although *Nawrocki* involved a county road commission, the Supreme Court stated, in apparent dicta, that municipalities would also be immune from tort liability for defective traffic signals because traffic signals did not fit into the definition of "highway" as used in the statute and, therefore, would not be part of the highway exception. *Id.*, 182 n 37.

This Court also extended the *Nawrocki* decision to municipalities. In *Weaver,* this Court convened a special panel to resolve a conflict between the vacated opinion in that case[4] and *Ridley v Detroit (On Remand)*, 246 Mich App 687; 639 NW2d 258 (2001). The conflict revolved around whether a municipality was liable under the highway exception for negligent maintenance of a streetlight pole. *Weaver, supra* at 240. The special panel relied on *Nawrocki* in finding that streetlight poles, like "traffic signals and signs," are not part of the definition of "highway" provided in MCL 691.1401(e) and, therefore, do not fall within the highway exception to governmental immunity. *Weaver, supra* at 245.

In *Adams v Dep't of Transportation*, 253 Mich App 431; 655 NW2d 625 (2002), this Court also convened a special panel to resolve the conflict between this Court's vacated opinion in that case[5] and *Sekulov v City of Warren*, 251 Mich App 333; 650 NW2d 397 (2002), regarding the issue of the prospective or retrospective effect of *Nawrocki*. The special panel concluded that *Sekulov* was wrongly decided and that, although *Nawrocki* expressly overruled *Pick*, it did not state a new principle of law, so its holding therefore applied retroactively. *Adams, supra* at 440. Significantly, in *Adams,* a power outage caused a traffic signal at an

---

[4] 249 Mich App 801 (2002).

[5] 251 Mich App 801 (2002).

intersection to become disabled. The *Adams* panel approved the trial court's grant of immunity from liability for injuries resulting from the motor vehicle accident caused by the inoperative traffic signal light.

After studying the history of cases addressing the "still-unsettled issue of the highway exception,"[6] and applying the statutory law to the instant issue, we have no other option but to conclude that a municipality is not responsible for failure to maintain a traffic control device, including a traffic signal light, under the prevailing judicial precedent and statutory law. Specifically of interest to us in reaching this conclusion, other than the obvious guidance of *Nawrocki* and its progeny, was our Supreme Court's fragmented set of opinions in *Chaney*, written some ten years ago. While the facts of *Chaney* indicate that the case involved a guardrail, our Supreme Court discussed the state of the law on the issue of governmental immunity, resulting in five concurring opinions and one dissent.

In *Chaney*, a case relied upon by plaintiffs in the instant action, Justice BOYLE clearly enunciated in a concurring opinion the argument for holding governmental units liable for failing to repair and maintain traffic signal lights and signs. See *Chaney, supra* at 171-177. Justice BOYLE's concurring opinion culminated in the following conclusion: "[B]ecause the Legislature restricted liability without mentioning signs and traffic lights, it is reasonable to infer that it intended that governmental units should be liable for failing to repair and maintain signs and signals." *Id.* at 176. Essentially, Justice BOYLE made the argument that plaintiffs would have us adopt in the instant case—that while the highway exception is limited, it should also include

---

[6] *Pick, supra* at 610.

those objects in the roadway that affect safe and efficient travel, such as signal lights.

An opinion concurring in part and dissenting in part, written by Justice RILEY and concurred with by Justice GRIFFIN, would limit liability to roadbed defects alone. *Chaney, supra* at 163-171. The view of Justices RILEY and GRIFFIN was, in effect, the holding of the *Nawrocki* Court.

Justice BRICKLEY's view on the issue was as follows:

> ... I read the statute as creating liability for an accident that occurs on the improved portion of the highway caused by a condition that affects that improved portion, regardless of the ultimate location of that cause. Hence, this and my prior decisions allow for recovery when, and only when, the occurrence is on the improved portion and is caused by a condition directly affecting vehicular travel on the improved portion, even though that condition may have been occasioned by an act or an omission outside the improved portion of the highway.

> As expressed herein, it is my view that this latter interpretation best captures the essence of a statute that provides liability for mishaps occurring on the improved portion of the highway, but which does so without any direct reference to the location of their causality. [*Chaney, supra* at 163 n 7.]

Finally, Chief Justice CAVANAGH, while concurring with the majority that immunity applies under the guardrail fact pattern, stated the following regarding his view of the highway exception in general:

> Admittedly, Justice RILEY's plain interpretation of the highway exception results in harsh consequences. Her interpretation, however, is defensible because it is in accord with the plain language of the statute and *Ross*'[7] com-

---

[7] *Ross v Consumers Power Co (On Rehearing)*, 420 Mich 567; 363 NW2d 641 (1984).

mand of broad governmental immunity with narrowly drawn exceptions. Furthermore, Justice RILEY's interpretation provides an exact standard, defining not only an injured party's rights but the government's potential liability. None of the other separate opinions satisfies each of these components.

Although I find Justices BRICKLEY's and BOYLE's interpretations preferable from a policy standpoint, I cannot in good conscience join either opinion. Justice BRICKLEY's interpretation does not provide a standard with which to guide both the bench and bar. The test is vulnerable to endless interpretation, encouraging recurrent appellate litigation. Justice BOYLE's interpretation, while more limited in scope, is not supported by the statutory language or post-*Ross* case law. [*Chaney, supra* at 177-178.]

While strong policy considerations make Justice BOYLE's approach an attractive one, the developing law in the last decade, both pre- and post-*Nawrocki*, simply does not allow that result today in the instant case. We recognize that Justice BOYLE's argument, although to some more palatable, was made and not adopted. Since then, various courts in Michigan have faced the situation again and again, and have left us with a plethora of precedent dealing with the highway exception, seemingly each in its own way expanding the exception while purporting to narrowly construe it at the Legislature's direction. Conscience aside, we are left with little doubt regarding the resolution of this matter and must adopt the *Marchyok* reasoning. If liability is to attach to the municipality, it is a matter for the Legislature and not the judiciary.

In sum, after a comprehensive review of applicable legal precedent, we are required to respect the holding in *Marchyok* that footnote 37 of *Nawrocki, supra* at 182, was " 'more than mere dicta . . . . ' " *Marchyok, supra* at 689, quoting *Carr v City of Lansing,* 259 Mich App 376, 384; 674 NW2d 168 (2003). And, as such, we apply *Nawrocki* and *Weaver* and conclude that defendant has

governmental immunity from liability for Johnson's injury caused by the inoperative traffic signal at Pennington and West Seven Mile Road. A governmental agency is immune from tort liability when engaged in a governmental function. MCL 691.1407(1). However, a governmental agency has a duty to maintain the highways under its jurisdiction in reasonable repair to keep the highways reasonably safe and convenient for public travel, and is not immune from tort liability for failing to do so. MCL 691.1402(1). In applying the precedent and statutory law in a logical manner, we conclude that defendant did not fail in its duty to maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel because a traffic signal is not part of the highway. The highway exception does not impose a duty on municipalities to install, maintain, repair, or improve traffic signals. See *Nawrocki, supra* at 180; *Weaver, supra* at 245.

### IV. CONCLUSION

Because plaintiffs' claim does not fall within an exception to governmental immunity, defendant is entitled to summary disposition under MCR 2.116(C)(7) and MCR 2.116(C)(8).

Reversed and remanded for entry of an order of dismissal. We do not retain jurisdiction.

OWENS, P.J., and SAAD, BANDSTRA, SMOLENSKI, and FORT HOOD, JJ., concurred.

METER, J. (*dissenting*). I respectfully dissent. If this case involved a defective traffic control device on a noncounty highway over which Detroit had jurisdiction, then statutory language, common sense, and case law support the conclusion that Detroit may be held liable for the injury in question. Conversely, if this case

involved a defective traffic control device on a county highway over which Detroit had jurisdiction, then Detroit may be held liable if the two conditions set forth in MCL 691.1402a(1) were satisfied. I would remand this case for further proceedings.

## I. PERTINENT STATUTES

In general, "a governmental agency is immune from tort liability if the governmental agency is engaged in the exercise or discharge of a governmental function." MCL 691.1407(1). The so-called "highway exception to governmental immunity" is found at MCL 691.1402, which states, in part:

> (1) Except as otherwise provided in [MCL 691.1402a], each governmental agency[1] having jurisdiction over a highway shall maintain the highway in reasonable repair so that it is reasonably safe and convenient for public travel. A person who sustains bodily injury or damage to his or her property by reason of failure of a governmental agency to keep a highway under its jurisdiction in reasonable repair and in a condition reasonably safe and fit for travel may recover the damages suffered by him or her from the governmental agency. . . . The duty of the state and the county road commissions to repair and maintain highways, and the liability for that duty, extends only to the improved portion of the highway designed for vehicular travel and does not include sidewalks, trailways, crosswalks, or any other installation outside of the improved portion of the highway designed for vehicular travel.

MCL 691.1402a states, in part:

> (1) Except as otherwise provided by this section, a municipal corporation has no duty to repair or maintain, and is not liable for injuries arising from, a portion of a county highway outside of the improved portion of the highway designed for vehicular travel, including a side-

---

[1] Detroit is considered both a "municipal corporation" and a "governmental agency" by virtue of MCL 691.1401(a), (b), and (d).

walk, trailway, crosswalk, or other installation. This sub-
section does not prevent or limit a municipal corporation's
liability if both of the following are true:

(a) At least 30 days before the occurrence of the relevant
injury, death, or damage, the municipal corporation knew
or, in the exercise of reasonable diligence, should have
known of the existence of a defect in a sidewalk, trailway,
crosswalk, or other installation outside of the improved
portion of the highway designed for vehicular travel.

(b) The defect described in subdivision (a) is a proximate
cause of the injury, death, or damage.

The term "highway" is defined by MCL 691.1401(e),
which states:

"Highway" means a public highway, road, or street that
is open for public travel and includes bridges, sidewalks,
trailways, crosswalks, and culverts on the highway. The
term highway does not include alleys, trees, and utility
poles.

## II. STATEMENT OF THE ISSUE

The issue in the present case is whether Detroit may
be held liable for an injury allegedly caused by a
defective traffic signal located at the intersection of
West Seven Mile Road and Pennington Street in De-
troit. The parties appear to disagree regarding whether
the traffic signal at issue controlled the traffic on a
county highway or a city road. Therefore, I will analyze
this case under both factual situations.

### III. ANALYSIS

#### A. NONCOUNTY HIGHWAY

Assuming that this case involves a noncounty high-
way, MCL 691.1402a becomes irrelevant, and the focus
shifts to MCL 691.1402. Under that section, a munici-

pality clearly is liable for failing to maintain a "highway in reasonable repair so that it is reasonably safe and convenient for public travel." Moreover, the duty of a municipality to keep a highway in reasonable repair is not statutorily limited, as it is with "state and ... county road commissions," to "the improved portion of the highway designed for vehicular travel .... " MCL 691.1402(1). Therefore, the pertinent question becomes whether a traffic signal is included within the definition of "highway."

As noted, MCL 691.1401(e) states:

> "Highway" means a public highway, road, or street that is open for public travel and includes bridges, sidewalks, trailways, crosswalks, and culverts on the highway. The term highway does not include alleys, trees, and utility poles.

The majority concludes that a traffic signal does not fall within the definition of "highway." I disagree. Indeed, it is simply a matter of common sense that the duty to maintain a "highway" in proper condition entails the proper maintenance of a traffic signal that controls the flow of traffic on that highway. While the definition of "highway" in MCL 691.1401(e) does not specifically list the phrases "traffic signals" and "traffic control devices," it also does not include the term "asphalt" or the phrase "rumble strips," even though serious defects in those items would clearly subject a municipality to liability. Certain items are implicit within the term "highway" itself. It is simply incongruous that a municipality would have a duty to maintain road surfaces, bridges, sidewalks, trailways, crosswalks, and culverts, while *not* having a duty to maintain traffic signals, which are *crucial* to the ability of a pedestrian or a traveler in a vehicle to use a road or a crosswalk safely.

This commonsense conclusion—that the duty to maintain a highway encompasses the duty to maintain traffic control devices pertaining to that highway—is fully supported by this Court's decision in *Cox v Dearborn Hts,* 210 Mich App 389, 397; 534 NW2d 135 (1995), in which the Court stated, "[W]e today make explicit that municipalities may face liability where a pedestrian is injured as a result of allegedly inadequate traffic control devices." Contemplating the differing duties applied to municipalities as opposed to state and county road commissions under MCL 691.1402, the *Cox* Court stated, in part:

> While we are puzzled with regard to the Legislature's disparate treatment of municipalities vis-à-vis the state and county road commissions, our role is to enforce the law as written. Furthermore, our duty is to interpret the law, not make new laws. [*Cox, supra* at 397.]

The *Cox* Court also referred to Justice BOYLE's concurring opinion in *Chaney v Dep't of Transportation,* 447 Mich 145; 523 NW2d 762 (1994). *Cox, supra* at 397. In *Chaney,* Justice BOYLE stated that there are logical, statutory, and historical reasons for concluding that governmental agencies should be subject to liability for failing to maintain traffic signals and signs in reasonable repair. *Chaney, supra* at 175-176 (opinion of BOYLE, J.).

It is true that in *Nawrocki v Macomb Co Rd Comm,* 463 Mich 143, 182 n 37; 615 NW2d 702 (2000),[2] the Supreme Court, responding to the dissenting opinion in that case, stated the following:

---

[2] In *Nawrocki, supra* at 179-180, 183-184, the Court held, among other things, that state and county road commissions cannot be held liable for the failure to repair and maintain traffic control devices because such devices are not part of "the improved portion of the highway designed for vehicular travel" as delineated in MCL 691.1402(1).

The dissent accuses us of "shifting" the liability for traffic control devices, including traffic signs, from the state and county road commissions, to local municipalities. While the purpose of our holding today is merely to return to a principled application of the plain language of the highway exception, we are constrained to respond to the dissent's misapprehension of the governmental immunity statute.

Clearly, traffic signals and signs are not implicated in the broad definition of "highway" in MCL 691.1401(e); MSA 3.996(101)(e): " 'Highway' means a public highway, road, or street that is open for public travel and includes bridges, sidewalks, trailways, crosswalks, and culverts on the highway. The term highway does not include alleys, trees, and utility poles." MCL 691.1402; MSA 3.996(102) creates an exception to governmental immunity for the state or county road commissions' failure to maintain and repair the "improved portion of the highway designed for vehicular travel." Thus, there is a gap that exists between the "improved portion of the highway designed for vehicular travel," and the broader confines of "highway," defined in subsection 1(e). MCL 691.1402a; MSA 3.996(102a) seeks to fill this gap, at least with respect to *county* highways. [Emphasis in original.] However, *because traffic control devices are clearly not implicated in the broad definition of "highway," there can be no "shifting" of liability from the state and county road commissions to local municipalities*. [Emphasis added.]

The majority in the instant case places great emphasis on this footnote. I, however, find that it constitutes nonbinding obiter dicta because it was simply not necessary to resolve the pertinent issue in *Nawrocki*. See *Dessart v Burak,* 252 Mich App 490, 496; 652 NW2d 669 (2002) (discussing obiter dicta).

In *Carr v City of Lansing,* 259 Mich App 376, 383-384; 674 NW2d 168 (2003), the Court concluded that footnote 37 of *Nawrocki, supra* at 182, does in fact

constitute binding precedent. The Court stated the following:

> Although, the trial court in the instant case dismissed footnote 37 in *Evens-Nawrocki* as dictum, this Court has noted that dictum is a " 'judicial comment made during the course of delivering a judicial opinion, but one that is unnecessary to the decision in the case and therefore not precedential (though it may be considered persuasive).' " *People v Higuera,* 244 Mich App 429, 437; 625 NW2d 444 (2001), quoting Black's Law Dictionary (7th ed). Nevertheless, the *Higuera* Court recognized that, " ' "[w]hen a court of last resort intentionally takes up, discusses and decides a question germane to, though not necessarily decisive of, the controversy, such decision is not a dictum but is a judicial act of the court which it will thereafter recognize as a binding decision." ' " *Higuera, supra* at 437, quoting *Detroit v Michigan Pub Utilities Comm,* 288 Mich 267, 299-300; 286 NW 368 (1939), in turn quoting *Chase v American Cartage Co, Inc,* 176 Wis 235, 238; 186 NW 598 (1922). So, a "decision of the Supreme Court is authoritative with regard to any point decided if the Court's opinion demonstrates 'application of the judicial mind to the precise question adjudged, regardless of whether it was necessary to decide the question to decide the case.' " *Higuera, supra* at 437, quoting *People v Bonoite,* 112 Mich App 167, 171; 315 NW2d 884 (1982). Clearly, whether the Court's decision in *Evens* would "shift liability" for signage to municipalities was germane to the Court's holding regarding immunity of the state and county road commissions and displayed the "application of the judicial mind" to the question. Consequently, the *Evens* Court's comments in footnote 37 are more than mere dicta; they must be read as implicitly overruling *Cox.* [*Carr, supra* at 383-384.]

I do not agree with this analysis set forth by the *Carr* Court. Indeed, the *Nawrocki* Court's paragraph-long analysis in a footnote of its opinion should not be considered an "application of the judicial mind" such

that the analysis is transformed from obiter dicta into binding precedent. This is especially true because the Supreme Court in footnote 37 of *Nawrocki* made no mention of *O'Hare v Detroit,* 362 Mich 19, 24-26; 106 NW2d 538 (1960), a case in which the Supreme Court concluded that a municipality's duty to maintain streets in reasonable repair encompasses the duty to maintain stop signs in reasonable repair. One would hope that a true "application of the judicial mind" to a question would include a discussion of decades-long precedent, such as *O'Hare,* that is evidently being overruled in the course of resolving the question at hand. That *O'Hare* is not discussed in footnote 37 of *Nawrocki* supports my conclusion that the footnote constitutes mere obiter dicta.

Moreover, and importantly, I am not bound by *Carr* (despite my disagreement with it) under MCR 7.215(J)(1)[3] because *Cox,* which conflicts with *Carr,* was released before *Carr.* As noted in *Novak v Nationwide Mut Ins Co,* 235 Mich App 675, 690; 599 NW2d 546 (1999), "in cases of conflicting opinions issued on or after November 1, 1990, the Court is to follow the first opinion that addresses the matter at issue." See also *Marchyok v City of Ann Arbor,* 260 Mich App 684, 694; 679 NW2d 703 (2004) (O'CONNELL, J., dissenting). Moreover, *O'Hare,* as a Supreme Court case, obviously takes precedence over *Carr.*

Further, my conclusion that municipalities may be held liable for defective traffic control devices on non-

---

[3] MCR 7.215(J)(1) states that

> [a] panel of the Court of Appeals must follow the rule of law established by a prior published decision of the Court of Appeals issued on or after November 1, 1990, that has not been reversed or modified by the Supreme Court, or by a special panel of the Court of Appeals as provided in this rule.

county highways is not undermined by either *Weaver v Detroit,* 252 Mich App 239; 651 NW2d 482 (2002), or *Stevenson v Detroit,* 264 Mich App 37; 689 NW2d 239 (2004), the latter of which I authored. These cases involved municipalities, and the decisions relied heavily on the definition of "highway" in MCL 691.1401(e). See *Weaver, supra* at 240, 245-246 (streetlight pole, which fell on the plaintiff's decedent, not considered part of highway), and *Stevenson, supra* at 43 (berm not considered part of highway). I do not find these cases dispositive because a streetlight pole and a berm are fundamentally different from traffic control devices. As noted in *Stevenson, supra* at 45 n 2, "a defective 'berm' as defined in the instant case is fundamentally different from a defective traffic control device, which can directly affect a person's use of the street itself." This observation from *Stevenson* applies equally, in my opinion, to the question of a streetlight pole versus a traffic control device. A reasonable and commonsense construction of the term "highway" includes traffic control devices.[4]

In sum, I believe that statutory language, common sense, and case law support the conclusion that a municipality may be held liable for improperly maintaining traffic control devices on a noncounty highway

---

[4] In *Ridley v Detroit (On Second Remand),* 258 Mich App 511, 514-516; 673 NW2d 448 (2003), this Court concluded, albeit reluctantly, that a municipality could not be held liable for inadequate illumination of a highway because illumination was not included within the definition of "highway" in MCL 691.1401(e). Although the issue is not before me, illumination arguably falls within the definition of "highway" in the same commonsense manner that traffic control devices do. At any rate, I am not bound by the *Ridley* holding because it dealt with illumination and not traffic control devices and because the *Cox* decision preceded it. See *Novak, supra* at 690. Moreover, the *Ridley* Court's discussion regarding traffic control devices, see *Ridley, supra* at 515-518, constitutes nonbinding obiter dicta.

under its jurisdiction. The duty of a municipality to keep a highway in reasonable repair simply is not limited, as it is with "state and . . . county road commissions," to "the improved portion of the highway designed for vehicular travel . . . . " MCL 691.1402(1). Moreover, a reasonable construction of the term "highway" includes traffic control devices, and both *Cox* and *O'Hare* support my conclusion today.

### B. COUNTY HIGHWAY

With regard to a county highway, my analysis is straightforward, given my conclusion in part A that traffic control devices are implicitly part of a "highway." MCL 691.1402a indicates that municipalities may be held liable, when certain conditions are met, for improperly maintaining portions of a county highway that are "outside of the improved portion of the highway designed for vehicular travel . . . ." Case law has made clear that traffic control devices are not part of the "improved portion of the highway designed for vehicular travel . . . ." *Nawrocki, supra* at 179-180, 183-184. MCL 691.1402a therefore indicates that a municipality may be held liable for the improper maintenance of a traffic control device on a county highway if the municipality had notice of the defect that caused the injury in question.[5]

### IV. CONCLUSION

If this case involved a traffic control device on a noncounty highway over which Detroit had jurisdiction, then Detroit clearly was subject to liability. If this case

---

[5] A municipality's liability under MCL 691.1402a(1) is limited by certain environmental protection laws that apparently are not at issue here. See MCL 691.1402a(3).

involved a traffic control device on a county highway over which Detroit had jurisdiction, then Detroit was subject to liability if the two conditions set forth in MCL 691.1402a(1) were satisfied.

I would remand this case for further proceedings.